**Michigan Supreme Court**
Lansing, Michigan 48909

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 30, 2003**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                              No. 120515

TERRY LYNN KATT,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

The issue in this case is whether the trial court properly admitted under MRE 803(24) the victim's hearsay statement made to a social worker that defendant sexually abused her. The statement did not qualify for admission under MRE 803A, the tender-years rule.

We conclude that the trial court properly admitted the statement. MRE 803(24) permits the admission of hearsay statements that narrowly miss the categorical exceptions of

MRE 803, but satisfy the requirements of MRE 803(24), under circumstances such as those present in this case. Accordingly, we affirm the judgment of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted defendant of three counts of first-degree criminal sexual conduct, sexual penetration of a victim under thirteen years of age (CSC I). MCL 750.520b(1)(a). The Court of Appeals affirmed the convictions.

### A. THE TRIAL COURT

In the trial court, the prosecution charged defendant with the sexual assaults of a seven-year-old boy (DD) and his five-year-old sister (AD) in the autumn of 1998. Defendant lived in a home with the children, their mother, her ex-husband, and another individual.

Before trial, the prosecutor moved to admit the testimony of Angela Bowman, a child-protective-services specialist with the Family Independence Agency (FIA). During the hearing, Bowman testified that she had visited DD at his elementary school after the FIA received an anonymous report that the children's mother was physically abusing them.

In the course of their conversation, Bowman asked DD to name the members of his household. He named defendant as a relative and spontaneously told Bowman that defendant was doing "nasty stuff" to him.

Bowman further testified that, when she asked DD what he

2

meant by nasty stuff, he was initially guarded, but, then, made the following statement:

> [Defendant] would come into his room, which [DD] shared with his sister [AD] and dis—totally disrobed, and take off his clothes, which would be a shirt, an underwear—some underwear or pajamas bottoms, if he were wearing them, and get on top of [DD]. And I ask—I asked him to describe now—at the time, because I wasn't prepared for this interview, I didn't have any anatomically correct dolls or anything, so I ask him to show—to demonstrate to the best of his ability what he was describing.

Bowman related the details of this and numerous other specific instances of defendant's abuse as DD had revealed them to her.

The prosecution conceded that DD's statement to Bowman was not admissible under the tender-years exception to the hearsay rule, MRE 803A, because it was his second statement about the abuse. Defendant argued that MRE 803A "covers the field," meaning that, if a statement falls in the category of a tender-years statement and is inadmissible under MRE 803A, it cannot be admitted under MRE 803(24).

The trial court rejected defendant's argument and admitted the evidence under MRE 803(24). In ruling that DD's statements satisfied the requirements of MRE 803(24), the court stated:

> [I]n the Court's opinion there are several indicia of trustworthiness in the statements given by [DD] to Miss Bowman. First is the spontaneity of [DD's] first statements to Miss Bowman. Recall—The Court's [sic] heard the testimony, that Miss Bowman was not there to talk about sexual abuse, she was there to talk about physical abuse.

3

I would also note that as far as this Court's record is concerned [DD and AD's mother] did not know that her child was going to be interviewed on October 27. Accordingly, there doesn't appear to be anything on the record here which would establish that somehow [DD] was prepped by somebody to mouth sentences to Miss Bowman that were not true. Miss Bowman first inquired of [DD] about physical abuse. Then, [DD,] and in this Court's opinion this is important, not in response to any questioning by Miss Bowman regarding sexual abuse, spontaneously spoke about abuse—sexual abuse by the defendant. It's clear that [DD] spoke from his personal knowledge. And, as her duty as a protective service worker, Miss Bowman inquired further. Now, Miss Bowman's qualifications to interview children were obvious from the record. She is aware of how to . . . interview children. She testified that she avoided leading questions and avoided other pitfalls of questioning young children. And the Court finds that she was totally aware how to get truthful information from [DD]. The Court finds that the record and the dynamics of this exchange between Miss Bowman and [DD] provided a form [sic] that an accurate statement would be uttered by [DD]. The Court finds no plan of falsification by [DD] under the circumstances in the record that I have before me, and no—and I do find a lack of motive to fabricate on the child's part. The Court also notes that Miss Bowman testified, and I believe her testimony, she had no preconceived notion that anything of a sexual nature occurred when she walked into the room on October 27, [19]97. Indeed, as I've stated before, she was there to talk about physical abuse.

* * *

Accordingly, the Court finds—from the totality of the circumstances here, I find the required trustworthiness guarantees that [MRE] 803(24) requires.

B. THE COURT OF APPEALS

On appeal, defendant again contended that DD's statement to Bowman was not admissible under MRE 803(24). He urged that

4

the Court adopt what has been dubbed the "near-miss" theory, which "maintains that a hearsay statement that is close to, but that does not fit precisely into, a recognized hearsay exception is not admissible under [the residual hearsay exception.]" *United States v Deeb*, 13 F3d 1532, 1536 (CA 11, 1994).

The Court of Appeals rejected the near miss-theory and defendant's narrow interpretation of MRE 803(24) and, instead, adopted the approach taken by the United States Court of Appeals for the Eighth Circuit in *United States v Earles*, 113 F3d 796 (CA 8, 1997):

> The meaning of the catch-all's "specifically covered" language has caused considerable debate. See, e.g., *McKethan v United States*, 439 US 936; 99 S Ct 333; 58 L Ed 2d 333 (1978) (Justices Stewart and Marshall dissenting from the Court's denial of writs of certiorari and contending that the Court should resolve the circuit split on this issue[.]). However, the majority of circuit courts have held that the phrase "specifically covered" means only that if a statement is *admissible* under one of the prior exceptions, such prior subsection should be relied upon instead of [the residual hearsay exception]. If, on the other hand, the statement is *inadmissible* under the other exceptions, these courts allow the testimony to be considered for admission under [the residual hearsay exception]. [248 Mich App 282, 292; 639 NW2d 815 (2001), quoting *Earles*, *supra* at 800 (emphasis in 248 Mich App 292).]

Defendant next argued that DD's statement did not meet two of the requirements of MRE 803(24). Specifically, (1) the evidence did not possess "equivalent circumstantial guarantees of trustworthiness" and (2) it was not more probative than

DD's first statement about the abuse, which was made to his mother before the Bowman interview.

The Court of Appeals rejected the first challenge, stating that it agreed with the trial court's "thorough and well-reasoned assessment that DD's statement implicating defendant in these crimes contained ample 'circumstantial guarantees of trustworthiness' as required by MRE 803(24)." 248 Mich App 297. Regarding DD's statements to his mother, the panel found that

> there is no indication in the record that either DD or AD recounted the circumstances of the assaults with the same detail. Nor is there any indication that their alleged statements to their mother contained particularized guarantees of trustworthiness similar to those regarding the statement given to Bowman. Indeed, when defense counsel inquired of the mother during trial regarding her knowledge of the alleged sexual abuse, she indicated only that AD had told the children's uncle about the abuse, who in turn told the mother . . . ." [*Id.* at 299-300.]

Accordingly, the Court of Appeals affirmed the trial court's admission of the evidence.

## II. STANDARD OF REVIEW

The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). However, the decision frequently involves a preliminary question of law, such as whether a rule of evidence or statute precludes the admission

6

of the evidence.  We review questions of law de novo.  *Id.;*

*People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998).

Therefore, when such preliminary questions are at issue, we

will find an abuse of discretion when a trial court admits

evidence that is inadmissible as a matter of law.  *Id.*

### III.  ANALYSIS

The Michigan Rules of Evidence contain two residual

exceptions:  MRE 803(24) and MRE 804(b)(7).  MRE 803(24), the

exception at issue here, provides:

> (24) Other Exceptions.   A  statement  not
> specifically  covered  by  any  of  the  foregoing
> exceptions  but  having  equivalent  circumstantial
> guarantees  of  trustworthiness,  if  the  court
> determines that (A) the statement is offered as
> evidence of a material fact, (B) the statement is
> more probative on the point for which it is offered
> than  any  other  evidence  that  the  proponent  can
> procure  through  reasonable  efforts,  and  (C)  the
> general  purposes  of  these  rules  and  the  interests
> of justice will best be served by admission of the
> statement into evidence. However, a statement may
> not  be  admitted  under  this  exception  unless  the
> proponent  of  the  statement  makes  known  to  the
> adverse party, sufficiently in advance of the trial
> or hearing to provide the adverse party with a fair
> opportunity to prepare to meet it, the proponent's
> intention  to  offer  the  statement  and  the
> particulars of it, including the name and address
> of the declarant.

Thus, evidence offered under MRE 803(24) must satisfy

four  elements  to  be  admissible:    (1)  it  must  have

circumstantial  guarantees  of  trustworthiness  equal  to  the

categorical  exceptions,  (2)  it  must  tend  to  establish  a

material fact, (3) it must be the most probative evidence on

that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice. Also, the offering party must give advance notice of intent to introduce the evidence.

MRE 803(24) is nearly identical to FRE 807.[1] "The Michigan Rules of Evidence were based on the Federal Rules of Evidence." *People v Kreiner*, 415 Mich 372, 378; 329 NW2d 716 (1982). As a result, Michigan courts have referred to federal cases interpreting rules of evidence when there is a dearth of related Michigan case law. See, e.g., *People v VanderVliet*, 444 Mich 52, 60 n 7; 508 NW2d 114 (1993); *People v Welch*, 226 Mich App 461, 466; 574 NW2d 682 (1997).

---

[1]FRE 803(24) contained one of the Federal Rules' residual exceptions until 1997. At that time, FRE 803(24) was combined with FRE 804(b)(5) and moved to FRE 807. FRE 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Given that Michigan did not adopt residual exceptions to its rules of evidence until 1996, there is little case law interpreting them. Before this case, no Michigan court had considered whether evidence that is similar to a categorical hearsay exception could still be admitted under one of the residual exceptions. Therefore, it is appropriate to consider the federal courts' discussions of the issue.

### A. THE RESIDUAL EXCEPTIONS AND THEIR APPLICATION IN "NEAR MISS" SITUATIONS

The residual exceptions are designed to be used as safety valves in the hearsay rules. They will allow evidence to be admitted that is not "specifically covered" by any of the categorical hearsay exceptions under circumstances dictated by the rules. Differing interpretations of the words "specifically covered" have sparked the current debate over the admissibility of evidence that is factually similar to a categorical hearsay exception, but not admissible under it.[2]

### 1. THE NEAR-MISS THEORY

"The Near Miss theory . . . states that a piece of hearsay evidence may be offered only under the exception that most nearly describes it. If it is excluded under that exception, it may not be offered under the residual

---

[2]There is no doubt, of course, that statements completely alien to any of the categorical exceptions may be candidates for admission under the residual exceptions.

9

exceptions." *In re Japanese Electronic Products Antitrust Litigation*, 723 F2d 238, 302 (CA 3, 1983), rev'd on other grounds *Matsushita Electric Industrial Co, Ltd v Zenith Radio Corp,* 475 US 574, 580; 106 S Ct 1348; 89 L Ed 2d 538 (1986). Judge Easterbrook gave a concise statement of the rationale behind the near-miss theory in his concurring opinion in *United States v Dent*, 984 F2d 1453, 1465-1466 (CA 7, 1993):

> [The residual exception] reads more naturally if we understand the introductory clause to mean that evidence of a kind specifically addressed ("covered") by one of the [categorical exceptions] must satisfy the conditions laid down for its admission, and that other kinds of evidence not covered (because the drafters could not be exhaustive) are admissible if the evidence is approximately as reliable as evidence that would be admissible under the [categorical exceptions].

The United States District Court for the Eastern District of Pennsylvania described another basis for the theory in *Zenith Radio Corp v Matsushita Electric Industrial Co, Ltd,* 505 F Supp 1190 (ED Penn, 1980):

> The [near-miss theory] is also supported by a basic principle of statutory construction, which we find equally applicable to the Federal Rules of Evidence: that the specific controls the general. As the Supreme Court stated in *Radzanower v Touche Ross & Co*, 426 US 148, 153, 48 L Ed 2d 540, 96 S Ct 1989 (1976):
>
> > "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. 'Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.' *Morton v*

> *Mancari*, 417 US 535, 550-551 (1974)." [Citations omitted.]

> In conformity with this rule we conclude that the residual exceptions cannot be invoked when there is a specific exception which sets forth conditions governing the admissibility of a clearly defined category of hearsay evidence. [*Zenith, supra* at 1263 n 91 (discussing former FRE 803[24] before the adoption of FRE 807).]

Thus, the near-miss theory is based on a broad reading of the term "specifically covered." Evidence is "specifically covered" if there is a categorical hearsay exception dealing with the same subject matter or type of evidence. Accordingly, under the near-miss theory, a party could never use a residual exception to admit evidence that was inadmissible under, but related to, a categorical exception.

For example, a strict application of this theory would preclude admission of a business document unless it met the requirements of MRE 803(6). The residual exception would not be available for it under any circumstances.

Although the near-miss theory would simplify the resolution of disputes regarding the admission of hearsay, few courts in the nation have adopted it. Those that have done so have softened the rule.[3] Even the *Zenith* court declined to

---

[3]See *United States v Mejia-Valez*, 855 F Supp 607, 617-618 (ED NY, 1994)(holding that defendant could not use the residual exception to admit hearsay statements from an available declarant when the covered exception required unavailability); *In re Fill*, 68 BR 923, 931 (SD NY, 1987)(holding that "highly unusual case[s]" may be exempted from the near-miss theory).

11

hold that the residual exception could never be used to admit evidence that fell within a categorical exception, but was inadmissible under it:

> Some of the . . . specific hearsay exceptions similarly apply to a clearly defined category of evidence, and we would follow the "near miss" doctrine with respect to them . . . if the evidence before us were within those categories. E.g., Rule 803(18) (learned treatises); Rule 803(22) (judgment of previous conviction.)

> However, most of the hearsay exceptions which plaintiffs invoke are not of this type. They do not apply to a clearly defined category of evidence, as the former testimony exception does. Instead, they apply to a relatively amorphous category of evidence which is delimited solely by the requirements set forth in the rule itself. For instance, the business records exception applies to any "memorandum, report, record, or data compilation, in any form" which satisfies certain additional requirements. . . . *We do not see how the "near miss" doctrine which defendants urge could practically be applied to those rules, without negating the residual exceptions altogether, a result which is plainly contrary to the intent of Congress.* [*Id.* at 1264 (emphasis added), accord *Acme Printing Ink Co v Menard, Inc*, 812 F Supp 1498, 1527 (ED Wis, 1992).]

## 2. REJECTING THE NEAR-MISS THEORY

The great majority of courts have rejected the near-miss theory by interpreting the residual exception to omit as "specifically covered" *only those hearsay statements admissible under a categorical exception*. A statement not admissible under the categorical exceptions would not be "specifically covered" by those exceptions, and thus could be a candidate for admissibility under the residual exceptions.

12

In *United States v Clarke,*[4] the United States Court of Appeals for the Fourth Circuit explained the rationale for rejecting the near-miss theory.

> Appellant asks us to construe "not specifically covered" narrowly, limiting [the residual exceptions] to cases in no way touched by one of the [categorical] exceptions. According to appellant, admitting testimony that was a "near miss" under 804(B)(1) would undermine the protections of the evidentiary rules, as well as violate the Sixth Amendment's Confrontation Clause.
>
> We disagree. Appellant's view of "not specifically covered" would effectively render [the residual exception] a nullity. The plain meaning, and the purpose, of [the residual exception] do not permit such a narrow reading. *We believe that "specifically covered" means exactly what it says: if a statement does not meet all of the requirements for admissibility under one of the prior exceptions, then it is not "specifically covered." United States v. Fernandez,* 892 F2d 976, 981 (11th Cir. 1989). This reading is consistent with the purposes of [the residual exception]. That rule rejects formal categories in favor of a functional inquiry into trustworthiness, thus permitting the admission of statements that fail the strict requirements of the prior exceptions, but are nonetheless shown to be reliable. If we were to adopt appellant's reading of the rule, we would deprive the jury of probative evidence relevant to the jury's truth-seeking role.

> * * *

> To adopt the "near miss" theory would create an odd situation where testimony that was equally trustworthy would be distinguishable based merely on its proximity to a specified exception. For instance, in *United States v Ellis*, 951 F.2d 580 (4th Cir. 1991), this circuit approved the admission of the statement made by a later-deceased witness pursuant to a plea agreement under

---

[4] 2 F3d 81 (CA 4, 1993).

13

804(b)(5), even though that statement was very different from any of the specified exceptions. Given our holding in *Ellis*, it would contradict common sense to exclude equally reliable testimony here simply because it fell closer to one of the specified exceptions. We thus reject the "near miss" theory of interpreting Fed. R. Evid. 803(24) and 804(b)(5). [*Clarke*, 2 F3d 83-84 (emphasis added) (discussing the former residual exceptions before the adoption of FRE 807).]

The United States Court of Appeals for the Sixth Circuit followed suit in *United States v Laster*,[5] stating:

Although some courts have held that if proffered evidence fails to meet the requirements of the Fed. R. Evid. 803 hearsay exception, it cannot qualify for admission under the residual exception, the court declines to adopt this narrow interpretation of Fed. R. Evid. 807 as suggested by defendants. Rather, this court interprets Fed. R. Evid. 807, along with the majority of circuits, to mean that "if a statement is admissible under one of the hearsay exceptions, that exception should be relied on instead of the residual exception." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 807.03(4) (2d ed. 2000). We endorse the reasoning in *United States v Earles*, 113 F3d 796 (8th Cir, 1997), which held that "the phrase 'specifically covered' [by a hearsay exception] means only that if a statement is admissible under one of the [residual] exceptions, such [] subsection should be relied upon" instead of the residual exception. *Id*. at 800 (emphasis in original). Therefore, the analysis of a hearsay statement should not end when a statement fails to qualify as a prior inconsistent statement, but should be evaluated under the residual hearsay exception. [*Laster*, 258 F3d 530.]

In this case, the Court of Appeals followed the weight of the authority and rejected the near-miss theory. Because we agree that the language of the rule does not support the near-

_____

[5]258 F3d 525 (CA 6, 2001).

14

miss theory, we affirm the judgment of the Court of Appeals.

### 3. OUR APPROACH TO THE RESIDUAL EXCEPTION

We agree with the majority of the federal courts and conclude that a hearsay statement is "specifically covered" by another exception for purposes of MRE 803(24) only when it is admissible under that exception. Therefore, we decline to adopt the near-miss theory as part of our method for determining when hearsay statements may be admissible under MRE 803(24).

In our view, the arguments in favor of the near-miss theory are unpersuasive and do not conform to the language of the rule. *Random House Webster's College Dictionary* (1995) defines "cover" as "8. to deal with or provide for; address: *The rules cover working conditions.*" (Emphasis in original.) Therefore, a rule concerning the same subject matter as a piece of evidence, or from a similar source, arguably could be said to "cover" that evidence.

If the rule applied to all evidence not "covered" by other exceptions, the near-miss theory would be more persuasive.[6] However, the rule modifies the term "covered"

---

[6]We do not hold, however, that similarity in subject matter or scope leads to the conclusion that a particular exception "covers" evidence; we simply note that the near-miss theory would be more persuasive if the residual exception used the term "covered" alone rather than "specifically covered." In fact, we note that at least one commentator has stated that a statement is *not* "covered" by an exception if it is not admissible under that exception:

with the adjective "specifically." Hence, more than simple "coverage" is required. Black's Law Dictionary (7th ed) defines "specific" as "1. Of, relating to, or designating a particular or defined thing; explicit . . . . 2. Of or relating to a particular named thing . . . . 3. *Conformable to specific requirements* . . . ." (Emphasis added.)

Reading the words "specifically covered" together and giving each its normally understood meaning, we conclude that to be "specifically covered" requires *more* than to be "covered." Since "specific" can mean "conformable to specific

---

Judge Easterbrook's literalism, while ingenious, assumes both an unconvincing clarity and a peculiar meaning of "covered."[156] His complaint that the authors of the rule did not use the term "admissible" ignores the fact that hearsay exceptions do not make evidence admissible. It may be inadmissible under other rules (such as relevancy rules), acts of Congress, or the Constitution.

---

[156] The Webster's dictionary lists 23 meanings of the term "cover," including "to have width or scope enough to include or embrace." Webster's Third New International Dictionary, 524 (1986). It does not mean "is somewhat similar to," which seems to be the meaning ascribed by Judge Easterbrook to the rule's "specifically covered" language.

---

[Robinson, *From Fat Tony and Matty the Horse to the sad case of A.T.: Defensive and offensive use of hearsay evidence in criminal cases*, 32 Hous L R 895, 917 (1995).]

Moreover, although not deciding the meaning of "covered" in the rule, we note that "specifically covered" must mean more than "covered," no matter what meaning is given to the latter term.

requirements" and "cover" can mean "addressing" or "dealing with," we understand that a statement is only "specifically covered" by a categorical exception when it is *conformable to all the requirements of that categorical exception.*[7] To hold otherwise would read "specifically" out of the rule.[8]

---

[7] The dissent notes that the drafters of the rule used the phrase "specifically covered" rather than "specifically admissible." In our view, this terminology merely reflects that a statement satisfying all requirements of a categorical exception and, thus, admissible under that exception may still be inadmissible for other reasons. For example, a statement that would be admissible under the excited-utterance exception may nonetheless be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. See MRE 403. This is why MRE 803 begins, "The following are *not excluded* by the hearsay rule," rather than, "The following *are admissible*. (Emphasis added.) See also n 6. Notably, the dissent does not provide an alternate construction of the residual exception to support the near-miss theory, but relies on the history surrounding the Congressional enactment of the rules.

[8] Accord Fenner, The residual exception to the hearsay rule: The complete treatment, 33 Creighton L R 265, 274-275 (2000):

> Specific is defined as "a: constituting or falling into a specifiable category b: sharing or being those properties of something that allow it to be referred to a particular category." [Merriam-Webster's Collegiate Dictionary CD-ROM (Zane Pub. Co. 1996).] "Specifically covered" by one of those exceptions in 803 or 804, then, seems to mean falling within one of those exceptions. It does not seem to mean falling outside the exception. No matter how close it came, a miss is still a miss. This seems to be the plain meaning of the rule, as written.
>
> That is, each exception has certain foundational elements, and if there is sufficient evidence of each foundational element for any one exception then the statement is "specifically

17

We also disagree with the *Zenith* court that interpreting the residual exceptions in this manner will "nullify" the categorical exceptions. Indeed, by their own language the residual exceptions cannot apply to statements admissible under the other exceptions. Moreover, the requirements of the exceptions are stringent and will rarely be met, alleviating concerns that the residual exceptions will "swallow" the categorical exceptions through overuse.

We stress that this interpretation of the residual exceptions does not subvert the purpose of the hearsay rules. Each of the categorical exceptions requires a quantum of trustworthiness and each reflects instances in which courts have historically recognized that the required trustworthiness is present.[9] The residual exceptions require *equivalent*

covered" by the exception. It is specifically covered by this exception whether it fits under any other exception or not. And, if one of the foundational elements is missing, then it is not "specifically covered" by this exception—no matter how close it comes. In fact, in this latter situation, the statement is specifically not covered by the barely missed exception.

[9]The dissent and proponents of the near-miss theory treat the recognized exceptions like hermetically sealed, insular categories. However, many of the exceptions overlap. A present-sense impression under MRE 803(1) could also be an excited utterance under MRE 803(2). Does a statement that "nearly missed" being a present-sense impression, but was admitted as an excited utterance, undermine the hearsay rules? *No*, because the statement still had equivalent guarantees of trustworthiness.

Moreover, the overlap among the categorical exceptions

18

guarantees of trustworthiness.  Thus, if a near-miss statement

is deficient in one or more requirements of a categorical

exception, those deficiencies must be made up by alternate

indicia of trustworthiness.  To be admitted, residual hearsay

must reach the same quantum of reliability as categorical

hearsay; simply it must do so in different ways.[10]

Thus, we affirm that the residual exceptions may be used

to admit statements that are similar to, but not admissible

under, the categorical hearsay exceptions.  Next, we turn our

attention to the requirements of the residual exceptions

themselves.  We focus on MRE 803(24), the applicable exception

in this case.

The language of MRE 803(24) provides substantial guidance

in determining the proper method of analysis.  As we noted

above, the rule contains four elements.  To be admitted under

MRE 803(24), a hearsay statement must: (1) demonstrate

circumstantial guarantees of trustworthiness equivalent to the

---

further undermines the near-miss theory because one could *always* argue that a statement is generally addressed by one of the categorical exceptions.  For example, under the near-miss theory, nearly any explanation or description could be "specifically covered" by the present-sense impression exception.

[10]We fail to understand why achieving *equivalent* guarantees of trustworthiness through alternate means makes a residual hearsay statement less reliable than a statement that satisfies a categorical exception.  The categorical exceptions provide prescribed ways to assess hearsay; we do not accept that they are the *only* ways in which that assessment can be made.

categorical exceptions, (2) be relevant to a material fact, (3) be the most probative evidence of that fact reasonably available, and (4) serve the interests of justice by its admission.

The first and most important requirement is that the proffered statement have circumstantial guarantees of trustworthiness equivalent to those of the categorical hearsay exceptions. As the United States Court of Appeals for the Fourth Circuit noted in *Clarke*, "the inquiry into trustworthiness aligns with the inquiry demanded by the Confrontation Clause, which requires courts to examine the 'totality of the circumstances that surround the making of the statement' for 'particularized guarantees of trustworthiness.'" *Clarke, supra* at 84. Thus, courts should consider the "totality of the circumstances" surrounding each statement to determine whether equivalent guarantees of trustworthiness exist.

There is no complete list of factors that establish whether a statement has equivalent guarantees of trustworthiness.[11] However, the Confrontation Clause forbids

---

[11]In discussing the trustworthiness requirement, the Federal Rules of Evidence Manual states:

There are certain standard factors all courts consider in evaluating the trustworthiness of a declarant's statement under the residual exception. These include:

(1) The relationship between the declarant and the person to whom the statement was made. For example, a statement to a trusted confidante should be considered more reliable than a statement to a total stranger.

(2) The capacity of the declarant at the time of the statement. For instance, if the declarant [were] drunk or on drugs at the time, that would cut against a finding of trustworthiness . . . .

(3) The personal truthfulness of the declarant. If the declarant is an untruthful person, this cuts against admissibility, while an unimpeachable character for veracity cuts in favor of admitting the statement. The government cannot seriously argue that the trust due an isolated statement should not be colored by compelling evidence of the lack of credibility of its source: although a checkout aisle tabloid might contain unvarnished truth, even a devotee would do well to view its claims with a measure of skepticism.

(4) Whether the declarant appeared to carefully consider his statement.

(5) Whether the declarant recanted or repudiated the statement after it was made.

(6) Whether the declarant has made other statements that were either consistent or inconsistent with the proffered statement.

(7) Whether the behavior of the declarant was consistent with the content of the statement.

(8) Whether the declarant had personal knowledge of the event or condition described.

(9) Whether the declarant's memory might have been impaired due to the lapse of time between the event and the statement.

(10) Whether the statement, as well as the event described by the statement, is clear and factual, or instead is vague and ambiguous.

the use of corrobative evidence to determine the trustworthiness of statements offered under the residual exception in criminal cases if the declarant does not testify at trial. *Idaho v Wright*, 497 US 805, 823; 110 S Ct 3139; 111 L Ed 2d 638 (1990).[12] Beyond this limitation, courts should

---

(11) Whether the statement was made under formal circumstances or pursuant to formal duties, such that the declarant would have been likely to consider the accuracy of the statement when making it.

(12) Whether the statement appears to have been made in anticipation of litigation and is favorable to the person who made or prepared the statement.

(13) Whether the declarant was cross-examined by one who had interests similar to those of the party against whom the statement is offered.

(14) Whether the statement was given voluntarily or instead pursuant to a grant of immunity.

(15) Whether the declarant was a disinterested bystander or rather an interested party. [Federal Rules of Evidence Manual (Matthew Bender & Co Inc, 2002), § 807.02(4) (citations omitted).]

The list is not intended to be all-inclusive, but to provide general guidelines.

[12]If the declarant does testify at trial and is subject to cross-examination, corroborative evidence *may* be used to determine the trustworthiness of statements in criminal cases. The reason is that the Confrontation Clause is not implicated. *United States v Owens*, 484 US 554, 560; 108 S Ct 838; 98 L Ed 2d 951 (1988); *United States v NB*, 59 F3d 771 (CA 8, 1995). Similarly, in civil cases, corroborative evidence is always appropriate. *Larez v Los Angeles*, 946 F2d 630, 643 n 6 (CA 9, 1991).

consider all factors that add to or detract from the statement's reliability.

The second requirement is self-explanatory. To be admissible under the residual exceptions, the proffered statements must be directly relevant to a material fact in the case. A material fact is "[a] fact that is significant or essential to the issue or matter at hand." Black's Law Dictionary (7th ed).

The third requirement is that the proffered statement be the most probative evidence reasonably available to prove its point. It "essentially creates a 'best evidence' requirement." *Larez, supra* at 644. This is a high bar and will effectively limit use of the residual exception to exceptional circumstances. For instance, nonhearsay evidence on a material fact will nearly always have more probative value than hearsay statements, because nonhearsay derives from firsthand knowledge. Thus, the residual exception normally will not be available if there is nonhearsay evidence on point.

The final requirement is that admission of the proffered statement conforms to the "rules [of evidence] and serve the interests of justice." Accordingly, a court may refuse to admit a statement into evidence, even though the first three requirements of the exception have been met. This may occur if the court determines that the purpose of the rules and the

23

interests of justice will not be well served by the statement's admission.[13]

Finally, we note that the facts of each case determine the answers to questions about the admissibility of evidence. Here, the trial court did an exemplary job of making clear and concise findings on the record. In order to facilitate review in the future, we ask that courts faced with MRE 803(24) questions of the type presented here make similarly explicit supportive findings on the record.

### B. THE LOWER COURTS CORRECTLY APPLIED

### MRE 803(24) IN THIS CASE

We now turn to the facts of this case. In order to invoke MRE 803(24), the proffered statement must "not [be] specifically covered by any of the foregoing exceptions" of MRE 803. MRE 803(24). As described above, we interpret "specifically covered" to mean "admissible." Defendant does not assert that DD's statement would be admissible under any of the MRE 803 categorical exceptions. Therefore, the statement is a proper candidate for admissibility under MRE 803(24).[14]

_____

[13]If a statement is otherwise admissible under the residual exceptions, the interest-of-justice requirement will not preclude its admission for the sole reason that it is hearsay. If this were the case, the residual exceptions would be rendered useless.

[14]Because we interpret "specifically covered" by an exception to mean admissible under that exception, we are not

24

With respect to the rule's requirements, there is no dispute that the prosecution gave proper notice to defendant of its intent to submit DD's hearsay statements under MRE 803(24). Moreover, it cannot be disputed that DD's statements described the material facts of defendant's abusive acts.

The trial court made extensive findings on the record regarding DD's statement to Ms. Bowman and detailed the manner in which it satisfied each element of MRE 803(24). The court particularly elaborated on its findings regarding the trustworthiness of the statement, noting several times that its spontaneity and the fact it was unanticipated made it particularly reliable.

The trial court also noted that the timing of the statement negated any motive to fabricate. No investigation had begun when the statement was made, and no one knew that Ms. Bowman was to interview DD that day. Additionally, DD spoke from firsthand knowledge and in terms appropriate for a child of his age. Under the "totality" of these circumstances, the court concluded that the statement had circumstantial guarantees of trustworthiness equivalent to any

---

troubled by the proximity of DD's statement to MRE 803A. The statement is not admissible under 803A and is thus not "specifically covered" by 803A. The fact that 803A, which relates to the same subject matter as the proffered statement in this case, is not a "foregoing" exception of MRE 803(24) is thus irrelevant. *None* of the categorical hearsay exceptions "specifically covers" DD's statement.

25

of the categorical exceptions.

The trial court next found that DD's statement was the most probative evidence available concerning the actual abuse. DD did not anticipate the interview, and Ms. Bowman did not intentionally elicit incriminating information about someone other than the mother. Ms. Bowman also possessed the training to make a proper assessment of DD's credibility at the time.

Defendant argues before this Court that DD's first corroborative statement, made to his mother, was more probative than his statement to Ms. Bowman. However, the record contains no information about what DD said to his mother. All that is known is that both parties stipulated at trial that DD's mother had asked him some questions about defendant's abuse *before* DD spoke to Ms. Bowman.[15] It is not possible to compare the value of a statement of known content with a statement of unknown content.

Moreover, the statement made to Ms. Bowman is more probative than DD's testimony at trial for the same reasons that underscore the tender-years rule. As time goes on, a child's perceptions become more and more influenced by the reactions of the adults with whom the child speaks. It is for

---

[15]The prosecution also contends that DD's mother prompted this statement by repeatedly asking questions and that defendant discovered this fact at trial through cross-examination. As a result, the prosecution argues that DD's first statement would not have been admissible under MRE 803A in any event because the statement was not spontaneous.

26

that reason that the tender-years rule prefers a child's first statement over later statements. By analogy, the child's second statement is preferable to still later statements. Similarly, if DD's mother had a motive to induce her son to lie, she would have had much more opportunity to influence him before trial than before the Bowman interview.[16]

In aggregate, the trial court found that these circumstances justified the admission of DD's statement under MRE 803(24). The spontaneity of the interview, lack of motive to lie, and Ms. Bowman's interviewing methods combine to give the statement circumstantial guarantees of trustworthiness equivalent to the categorical exceptions. The unavailability of DD's first statement, the timing of the interview, and Ms. Bowman's careful conduct in eliciting information make this statement the most probative evidence of defendant's abusive acts. Having found that DD's statement met the first three requirements of MRE 803(24), the court concluded that admission would not endanger the interests of justice and ruled the statement admissible.

We agree with the Court of Appeals and hold that (1) the trial court properly analyzed DD's statement under MRE 803(24), and (2) there was sufficient evidence to support the

[16]The prosecution also contests defendant's assertions that DD's mother "coached" DD by noting that, after the Bowman interview, DD's mother told Bowman she did not believe DD's story.

trial court's findings. Consequently, we conclude that the trial court did not abuse its discretion in admitting the statement under MRE 803(24), even though the statement was not admissible under MRE 803A.

## IV. CONCLUSION

The trial court properly admitted DD's statement to Ms. Bowman under MRE 803(24), although it did not qualify for admission under MRE 803A. All the elements of MRE 803(24) were satisfied. Accordingly, there was no abuse of discretion and we affirm the decision of the Court of Appeals.

Marilyn Kelly
Maura D. Corrigan
Elizabeth A. Weaver
Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                      No. 120515

TERRY LYNN KATT,

    Defendant-Appellant.

---

YOUNG, J. (*dissenting*).

I disagree that evidence failing admissibility under one of the enumerated exceptions can nevertheless be admitted under the catch-all exception, MRE 803(24). Because the majority concludes otherwise, I respectfully dissent. I fully acknowledge that I advocate a minority position; however, I believe that this position best comports with the text of the residual hearsay exception as well as our time-honored prohibition against the admission of hearsay evidence.

The rule against the admissibility of hearsay is a venerable doctrine deeply rooted in our common law. The

principle has been called "a rule which may be esteemed, next to jury trial, the greatest contribution of that eminently practical legal system to the world's methods of procedure."[1]

Traditionally, witnesses were required to be present at trial, be placed under oath, and be subject to cross-examination in order to testify. Under those circumstances, a witness's credibility, memory, perception, and narration could be evaluated by the trier of fact. 2 McCormick, Evidence (5th ed), Hearsay Rule, § 245, p 93. The rule against hearsay is designed to maintain the integrity of witness testimony.[2]

Over the years, a number of exceptions to the general rule prohibiting the admission of hearsay have been developed. Generally, the exceptions rest on the conclusion that the circumstances of the making of particular statement provide circumstantial guarantees of trustworthiness. These guarantees are found because the circumstances surrounding the

---

[1] 5 Wigmore, Evidence (Chadbourn rev, 1974), § 1364, p 28. According to Wigmore, the prohibition against hearsay became entrenched in the common law between 1675 and 1690. *Id.* at 18.

[2] "Hearsay testimony is from the very nature of it attended with all such doubts and difficulties and it cannot clear them up. 'A person who relates a hearsay is not obliged to enter into any particulars, to answer any questions, to solve any difficulties, to reconcile any contradictions, to explain any obscurities, to remove any ambiguities; he entrenches himself in the simple assertion that he was told so, and leaves the burden entirely on his dead or absent author.'" McCormick, *supra*, quoting *Coleman v Southwick*, 9 Johns 45, 50 (NY, 1812).

2

making of the statement minimize or negate the hearsay dangers, such as insincerity or failure of memory.

In this case, the hearsay testimony at issue is specifically covered by MRE 803A, but cannot be admitted under that exception because, as the state concedes, the evidence was not the first corroborative statement regarding the incident. Accordingly, under the plain language of MRE 803(24), the evidence is "specifically covered" by MRE 803A and *cannot* be admitted under MRE 803(24).[3]

The approach advanced by the majority subverts our historical prohibition against the admission of hearsay evidence. In the majority view, evidence that is clearly inadmissible under one of the enumerated hearsay exceptions gets a second chance at admissibility under the residual exception if, among other factors, "the interests of justice", MRE 803(24)(C), would be served by its admission. The criterion, particularly when coupled with the deferential

---

[3] **MRE 803(24) provides:**

> Other Exceptions. A statement not *specifically covered* by one of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. [Emphasis added.]

3

abuse of discretion standard for appellate review,[4] essentially renders the general prohibition against hearsay, and the development of what hearsay is excepted and not excepted, hollow and meaningless.[5]

Against the nearly four hundred-year-old historical development of our hearsay rules, it is clear that the drafters of the rules did not intend a wholesale trampling of the enumerated hearsay exceptions when the federal residual hearsay exceptions were enacted.[6]  The advisory committee noted that the residual exceptions "do not contemplate an unfettered exercise of judicial discretion, but they do provide for treating *new and presently unanticipated situations* which demonstrate a trustworthiness within the spirit of the specifically stated exceptions."[7]

In this case, DD's statement to Angela Bowman was not a

---

[4] We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998); *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995).

[5] "The residuals are a 'Trojan Horse' that has been set upon the judiciary to wreak havoc and to emasculate the rule against hearsay.  Advocates for the exception, like the fated inhabitants of ancient Troy, erroneously believed that the exceptions could be adequately controlled by adding strict requirements for admission."  Beaver, *The residual hearsay exception reconsidered,* 20 Fla St U L R 787, 794-795 (1993).

[6] Originally, the federal residual hearsay exceptions were found at FRE 803(24) and FRE 804(b)(5).  In 1997, the two rules were combined and transferred to FRE 807.

[7] Advisory committee note on FRE 803(24), 56 F R D 183, 320 (1973) (emphasis added).

4

"*new and presently unanticipated situation.*"  In fact, evidence of second and subsequent corroborative statements are specifically contemplated and explicitly rejected by the clear language of MRE 803(A)—"[i]f the declarant made more than one corroborative statement about the incident, *only the first is admissible* under this rule." (Emphasis added.)

When construing a court rule, which includes a rule of evidence, this Court applies the legal principles that govern the construction of statutes.  *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). Accordingly, we begin with the plain language of the rule. When the language of the rule is unambiguous, we enforce the meaning expressed, without further judicial construction or interpretation.  *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996).

The majority treats the residual hearsay exception as if it read "A statement not specifically *admissible* under any of the foregoing exceptions"[8] rather than "specifically covered." Clearly, the plain language of the rule does not support such a reading.

---

[8] See also *United States v Dent*, 984 F2d 1453, in which, in his concurring opinion, Judge Easterbrook noted that *United States v Boulahanis*, 677 F2d 586 (CA 7, 1982), treated the residual exception as if it began "'A statement not specifically *admissible under* any of the foregoing exceptions . . . '. Evidence that flunks an express condition of a rule can come in anyway."

This Court made deliberate choices in deciding what varieties of hearsay would be admissible and reflected those choices in the words of the hearsay exceptions. The line-drawing efforts reflected in the enumerated hearsay exceptions are rendered purposeless if hearsay that does not meet the textual requirements of a specific hearsay exception is alternatively admitted under the residual exception.[9]

I believe that the trial court erred in allowing the hearsay testimony to be admitted into evidence. Furthermore, I do not believe that the error was harmless. The testimony of the children at trial was at times vague and inconsistent, and the physical examination of the children was inconclusive.

While the alternative construction proffered by my colleagues in the majority is a principled one, I believe my construction best harmonizes with the actual text of the evidentiary rule as well as our general and historical prohibition against the admission of hearsay evidence. The clear language of the residual hearsay exception precludes admissibility where the evidence does not meet the specific textual requirements of an enumerated hearsay exception.

I urge this Court to consider repealing MRE 803(24) and MRE 804(b)(5).

---

[9]See Jonakait, *Text, texts, or ad hoc determinations: Interpretation of the Federal Rules of Evidence*, 71 Ind L J 551 (1996), who favors a textualist approach to the residual hearsay exception.

Robert P. Young, Jr.
Michael F. Cavanagh
Clifford W. Taylor

7