# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LARRY DUANE CURRINGTON,

Defendant-Appellant.

UNPUBLISHED
July 27, 2017

No. 331954
Saginaw Circuit Court
LC No. 14-040592-FC

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) (sexual penetration while armed with a weapon), two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(e) (sexual contact while armed with a weapon), two counts of unlawfully driving away of an automobile, MCL 750.413, two counts of kidnapping, MCL 750.349, two counts of extortion, MCL 750.213, one count of armed robbery, MCL 750.529, one count of assault with intent to do great bodily harm less than murder, MCL 750.84, and one count of felonious assault, MCL 750.82. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to life in prison for each CSC-I conviction and each kidnapping conviction, and to prison terms of 600 months to 75 years for each CSC-II conviction, 240 months to 40 years for each unlawfully driving away of an automobile conviction, 700 months to 90 years for each extortion conviction, 600 months to 75 years for the armed robbery conviction, 600 months to 75 years for the assault with intent to do great bodily harm less than murder conviction, and 120 months to 15 years for the felonious assault conviction. Two of the CSC-I sentences were ordered to be served consecutively to two other CSC-I sentences, which themselves were ordered to be served consecutively to the two kidnapping sentences. The final sentence for CSC-I was ordered to be served consecutively to three of the CSC-I sentences and one of the kidnapping sentences. All other sentences were ordered to run concurrently. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions stem from three separate sexual assaults perpetrated on three separate victims on different dates. The assaults generally occurred in the victim's vehicle while defendant was armed with a bladed weapon. In two of the assaults, defendant drove the victim's

-1-

vehicle to a different location before assaulting her. Defendant robbed at least one victim. The boyfriend of one of the victims interrupted the assault on her soon after it began, pulling defendant out of the car; defendant fled on foot.

At trial, before the opening of proofs but after jury selection, defense counsel informed the trial court that defendant had informed him that he would like to represent himself. Defendant then told the trial court that he was "losing confidence" in his counsel because counsel had not obtained evidence related to the rental of "On Demand" movies from a cable provider, which defendant believed would substantiate his alibi defense that he was babysitting on the night that one of the assaults occurred. Defense counsel told the court that the issue had only recently been raised, and stated that he "would make inquiry" and contact an investigator to pursue the matter. The court asked defendant if under these circumstances he would be willing to have defense counsel continue representing him, and defendant responded, "Yes, Your Honor. As long as, you know, we understand, and me and him understood together, that he would pursue the defense that I've chosen for myself vigorously, I don't have a problem with that." The court found that defendant's request for self-representation was not unequivocal and stated that it was "not going to proceed any further with any further inquiry as to self-representation by the defendant."[1]

The three victims testified regarding the assaults. They identified defendant as their attacker. DNA evidence, taken from one of the victim's breasts and underwear, was matched to defendant and presented at trial.

Michigan State Police (MSP) Detective Trooper Robert Scott testified that he participated in the investigation of the assaults. Scott testified that a "Mr. Frank"[2] was interviewed "by one of the members of our team" about his possible involvement, but Scott was not sure who had conducted the interview. Scott testified that "Mr. Frank" was cleared of any involvement. When asked who had cleared "Mr. Frank," Scott testified that he did not know. Defense counsel then objected to Detective Scott's answer as hearsay. The trial court allowed the testimony, stating that "police officers' information from one to another, is subject to being admitted; his knowledge and working with that team and the investigation. So the objection is overruled."

MSP Detective Trooper Adam Green testified that he had never met Frank Reed, but was asked to "follow up" with him. Green testified that he believed Reed was one of the people listed as being in the area of the assaults when they took place. When asked who interviewed Reed, Green stated, "We did interview Frank Reed; we followed up with his coworkers." Green further testified that in the course of the investigation it was revealed to the investigative team that Reed and a coworker were delivering mail together at the time some of the assaults took

---

[1] Although defendant characterizes this action by the trial court as "denying" his request for self-representation, and although the trial court did in fact additionally indicate that it was denying defendant's request, we agree with the trial court that defendant did not in fact make an unequivocal request to represent himself.

[2] It appears from the record that the person referred to as "Mr. Frank" is Frank Reed.

place. Green testified that as far as he understood, Reed and his coworker were cleared of suspicion.

Defendant presented the testimony of a witness who was thirteen years old in 2014, who testified that defendant was at her residence all evening on September 6, 2014, the date one of the assaults occurred. The witness testified that she ordered "On Demand" television that evening. The witness's mother also testified that she could not remember the actual date, but did know that on one particular occasion defendant had watched her daughter at her apartment and had rented "On Demand" movies.

On the fourth day of trial, after the prosecution had presented its proofs, defendant again raised concerns about his counsel's representation. Defendant argued that his trial counsel did not question one of the victims, as he had wanted, about the underwear on which defendant's DNA was found. Defendant agreed that it was too late to represent himself in cross-examining witnesses, and did not expressly request to represent himself. To the contrary, defendant did not correct the trial court when it stated, "[b]ut my understanding is right now you're not asking to represent yourself, you just wanted to place your objections on the record, and I just wanted to make sure that all of that is clear."

The jury convicted defendant as described. This appeal followed.

## II. DENIAL OF SELF-REPRESENTATION

Defendant argues that the trial court improperly denied his request to represent himself. We disagree. We review for clear error "the trial court's factual findings surrounding a defendant's waiver." *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). "However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts," our review is de novo. *Russell*, 471 Mich at 187.

"[I]t is a long-held principle that courts are to make every reasonable presumption *against* the waiver of a fundamental and constitutional right, including the waiver of the right to the assistance of counsel." *Id*. at 188. "[W]hile the right of self-representation is a fundamental constitutional right, other interests, such as the failure to effectively waive the right to counsel . . . may in some instances outweigh the defendant's constitutional right to act as his own counsel." *Id*. at 189, citing *Martinez v Court of Appeal of California*, 528 US 152, 162; 120 S Ct 6845; 145 L Ed 2d 597 (2000). "[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as guarantor of a fair trial, 'is the standard, not the exception,' in the absence of a proper waiver." *Id*. at 189-190, quoting *Martinez*, 528 US at 161.

As our Supreme Court explained in *People v Williams*, 470 Mich 634, 642; 683 NW2d 597 (2004):

> The right of self-representation under Michigan law is secured by Const 1963, art 1, § 13 and by statute, MCL 763.1. In [*People v*] *Anderson*, [398 Mich 361,] 367-368[; 247 NW2d 857 (1976)], this Court held that a trial court must

make three findings before granting a defendant's waiver request. First, the waiver request must be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business.

"Consistent with *Anderson*," the *Williams* Court stated, "MCR 6.005(D)(1)[3] governs procedures concerning a defendant's waiver of the right to an attorney." *Id*.

The record in this case shows that defendant did not make an unequivocal request to represent himself at trial. Defendant admits on appeal that his desire to proceed *pro se* was based on his desire to pursue an alibi defense. After defense counsel agreed to speak with a private investigator about the "On Demand" records, defendant stated that he would be satisfied with defense counsel continuing to represent him if counsel vigorously pursued the alibi defense. Thus, any request to represent himself was far from "unequivocal," and there was no need for the trial court to engage in further colloquy with defendant regarding the *Anderson* factors or the requirements of MCR 6.005(D)(1). Defendant also later admitted, when expressing renewed concerns about his counsel's performance, that at the time he originally raised the issue of representing himself, he and his counsel "had agreed upon a defense."

Further, while no records from the cable provider (assuming they exist) were ultimately presented at trial concerning the "On Demand" movies allegedly ordered on September 6, 2014, defense counsel did present two witnesses in support of this alibi defense. And the record indicates that defense counsel faxed a cover letter and subpoena in an attempt to obtain the requested records. It thus appears that defense counsel actually did pursue defendant's chosen defense. Although defendant later raised other issues relating to his counsel's performance, he did not argue that defense counsel did not pursue the alibi defense that was the subject of his initial concern. The issues that defendant raised on the fourth day of trial arguably may have implicated a potential claim of ineffective assistance of counsel, but on appeal defendant presents no such argument.

---

[3] MCR 6.005(D)(1) provides as follows:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

We find no error in the trial court's denial of defendant's request to represent himself.

## III. ADMISSION OF HEARSAY

Defendant also argues that the trial court improperly admitted hearsay testimony in violation of his right of confrontation. We disagree. At trial, defendant raised a timely objection to the challenged testimony on hearsay grounds, and thus preserved that issue for appeal. *People v Jackson*, 292 Mich App 583, 594; 808 NW2d 541 (2001). However, he did not object on the ground that the admission of the challenged testimony violated his right of confrontation; this issue is therefore unpreserved. *Id*. (noting that the issue of whether the admission of evidence violates a defendant's right to confrontation must be preserved by defendant's objection on that basis at trial).

We review preserved evidentiary issues for an abuse of discretion. *Id*. "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). We review de novo questions of law "such as whether a rule of evidence of statute precludes the admission of the evidence." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). We review unpreserved claims of constitutional error for "plain error affecting substantial rights." *Id*.

The challenged testimony of Detective Scott was that "in the course of the investigation," another individual, "Mr. Frank," had been cleared of suspicion. The detective did not recount a specific statement made about the subject. Rather, he testified regarding the investigative process in order to explain how the police had turned their attention from that individual to others, including defendant.

The challenged testimony was not hearsay. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Statements "offered to show the effect of the out-of-court statement on the hearer," such as statements "offered to show why police officers acted as they did," are not hearsay. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). And while "[t]he Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination," it "does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." *Id*. at 10-11; citing US Const, am VI; Const 163, art 1, § 20. This is the case with Scott's testimony. The trial court did not err by admitting this evidence.

Further, even if the challenged testimony were hearsay and thus admitted in error, "[a] preserved error in the admission of evidence does not warrant reversal unless "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted). In this case, considering the DNA evidence and the fact that all of the victims identified defendant as the perpetrator, we cannot conclude that testimony that another person was cleared of suspicion by police investigators affected the

outcome of defendant's trial. Similarly, the admission of that testimony, even if we were to find it plainly erroneous, did not affect defendant's substantial rights. See *People v Carines*, 460 Mich 750, 772; 597 NW2d 130 (1999).

Affirmed.


/s/ Jane E. Markey
/s/ Mark T. Boonstra