# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ONYEMA ELLIS-JONES SIMMONS,

Defendant-Appellant.

UNPUBLISHED
September 12, 2017

No. 332677
Macomb Circuit Court
LC No. 2015-001679-FC

Before: O'BRIEN, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

A jury convicted defendant of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), and the trial court sentenced him to 25 to 40 years' imprisonment. Defendant appeals as of right. We affirm.

In August 2013, the victim, defendant's eight-year-old niece, stayed overnight at defendant's house. The victim testified that she went to bed in the basement with defendant and her four-year-old brother. During the night, defendant removed the victim's shorts, licked his finger and inserted it into her vagina, and also licked her vagina with his tongue. The victim disclosed the incident to her aunt the following morning. Later that day, the police were contacted, and Debra Bohach, a registered nurse, examined the victim. The victim described the assault to Bohach, and based on the victim's account of the events, Bohach took a sample swab of the victim's vagina. On September 11, 2013, Heather Solomon conducted a forensic interview of the victim, during which the victim discussed details of the assault with Solomon.

In January 2014, a lab tested the victim's vaginal swab and found male DNA, but the amount of male DNA found was insufficient to generate a DNA profile. However, the lab was able to run an Y-STR DNA test, which is a test designed to isolate and identify the male portion of the DNA, on the male DNA found in the victim's sample. The Y-STR haplotype identified in the victim's vaginal swab matched defendant's haplotype. An expert in forensic biology testified at trial that defendant's Y-STR haplotype would be expected to match 1 in 3,067 random males, 1 in 1,250 African-American males, and 1 in 1,220 Hispanic males.

On appeal, defendant argues that the trial court erred by admitting Bohach's testimony regarding the victim's description of the alleged assault. We disagree. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "A trial court abuses its discretion when its decision falls

-1-

outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation and citation omitted). However, "[p]reliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *Burns*, 494 Mich at 110.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay "is generally inadmissible unless it falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence." *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007), citing MRE 802. One such exception is MRE 803(4), which provides that statements made for the purpose of medical treatment are admissible "if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).

Here, the trial court did not abuse its discretion by admitting Bohach's testimony pursuant to MRE 803(4). Bohach, a registered nurse who had been performing forensic nurse examinations for the past 14 years, explained that she began the examination of the victim by asking her for a detailed medical history, including the reason that the victim was visiting Bohach on that particular occasion. The victim described to the nurse a sexual assault during which a man put his finger and tongue inside her vagina. Based on the victim's statements, Bohach tailored a medical plan for the victim, examining her vagina for abrasions or other injuries that required medical treatment. Therefore, the sexual assault that the victim described to the nurse was "reasonably necessary for diagnosis and treatment" because it determined the type of examination and course of treatment that was most appropriate. *Mahone*, 294 Mich App at 214-215. Defendant argues that the purpose of the victim's examination was to collect evidence, not for medical treatment. While it is true that Bohach collected swabs during her examination of the victim, the fact that evidence of a sexual assault was collected during the examination "is not dispositive." *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014). Moreover, contrary to defendant's argument, Bohach's decision to not swab the inside of the victim's vagina does not prove that the examination was not for medical treatment.[1] This is particularly true given that Bohach collected a detailed medical history from the victim and tailored her examination to the victim's description of the events that led her to seek treatment.

With regard to the victim's "self-interested motivation to be truthful in order to receive proper medical care," *Mahone*, 294 Mich App at 215, "[a] child can have the same selfish treatment-related motive to speak the truth as any adult," and the "inquiry into trustworthiness should therefore consider the totality of circumstances surrounding the declaration of the out-of-court statement," *People v Meebor*, 439 Mich 310, 324, 331; 484 NW2d 621 (1992). The

---

[1] Defendant contends that Bohach should have swabbed the inside of the victim's vagina in order to test for sexually transmitted diseases. However, Bohach testified that it was not protocol to take swabs from a child's vagina that had not yet menstruated, and we do not view Bohach's decision to follow protocol as evidence that the examination was not for a medical purpose.

Michigan Supreme Court identified the following factors as relevant to determining the trustworthiness of statements made in the course of seeking medical treatment:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325.]

The *Meeboer* Court also noted that "[c]orroborating physical evidence of the assault" and "evidence that the person identified as the assailant had the opportunity to commit the assault" can also "support the trustworthiness of the child's statements regarding a sexual assault and aid in the determination whether the statement was made for the purpose of receiving medical care." *Id*. at 326.

Here, the *Meeboer* factors and corroborating evidence support that the victim had a self-interested motivation to tell the truth to receive proper medical care. The victim was eight years old at the time of the assault and Bohach's examination.[2] Bohach testified that she elicited the victim's statement through nonleading and open questions about the assault. The victim described the assault to Bohach using childlike terminology, saying that defendant had abused her by placing his finger and tongue inside "my coo-coo." The victim's aunt initiated the examination within 24 hours of the assault, and the examination took place approximately six months before trial. The victim identified the assailant as her uncle, and there was no evidence presented that would indicate that the victim had a motive to fabricate her statement. The victim's statement was also corroborated by physical evidence: Y-STR DNA taken from her vaginal swab matched defendant's Y-STR haplotype. Lastly, multiple persons testified that defendant slept in the basement on the night of the assault, giving him an opportunity to commit the assault. Based on the foregoing, we conclude that the record contains ample evidence of trustworthiness in the victim's statements to Bohach consistent with the factors in *Meebor*, 439

---

[2] We recognize that there is no presumption that an eight year old understands the need to tell the truth, see *People v Garland*, 286 Mich App 1, 9; 777 NW2d 732 (2009) (recognizing that there is a "rebuttable presumption" that a child "over the age of ten . . . understood the need to tell the truth"), but do not find this dispositive in our determination of whether an eight year old's statement may be trustworthy when supported by other factors.

Mich at 324-326.  Accordingly, the trial court did not abuse its discretion in admitting the victim's statements to Bohach pursuant to MCR 803(4).[3]

Defendant also raises a number of issues in his Standard 4 brief.[4]  We address each of defendant's arguments in turn.  First, defendant argues that trial counsel was ineffective for (1) failing to object to the victim's aunt's testimony regarding the victim's disclosure of defendant's alleged assault and (2) failing to object to improper questions and comments by the prosecutor. We disagree.  "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*.  "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (citation and quotation marks omitted).  A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498, 647 NW2d 480 (2002).  Because defendant failed to preserve this issue by moving for an evidentiary hearing or new trial, "our review is limited to errors apparent on the record." *Lopez*, 305 Mich App at 693 (citation and quotation marks omitted).

In order to obtain a new trial based on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). When claiming ineffective assistance of counsel, the "defendant bears a heavy burden in establishing that counsel's performance was deficient and that [the defendant] was prejudiced by the deficiency." *Lopez*, 305 Mich App at 693-694.

At trial, the victim's aunt testified about statements that the victim made to her regarding the sexual assault.  While defendant is correct that the victim's aunt's testimony was hearsay, see MRE 801(c), it was properly admitted under MRE 803A.  MRE 803A provides in relevant part as follows:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant . . . is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

---

[3] Defendant also argues that Bohach's testimony of the victim's statement violated the Confrontation Clause.  However, Bohach's testimony did not violate the Confrontation Clause because, even assuming that the statements were testimonial, the victim testified at trial and was available for cross examination.  See *Crawford v Washington*, 541 US 36, 59 n 9; 124 S Ct 1354; 158 L Ed 2d 177 (2004) ("The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").

[4] See Michigan Supreme Court Administrative Order 2004–6, Standard 4.

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

*If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.* [Emphasis added.]

The record establishes that the victim was eight years old when she told her aunt about defendant's sexual assault. MRE 803A(1). Both the victim and her aunt testified that the act was entirely unprompted by the victim's aunt. MRE 803A(2). The victim and her aunt also testified that the victim reported the sexual abuse by defendant a day after the alleged abuse occurred. MRE 803A(3). Lastly, the contested statements were introduced by the victim's aunt, and the victim was the declarant. MRE 803A(4). Accordingly, the victim's aunt's testimony satisfied all of the elements in MRE 803A.

Defendant incorrectly argues that this testimony was inadmissible under MRE 803A because the trial court also admitted Bohach's testimony with respect to the victim's out-of-court allegations. Initially, we note that the victim's statement to Bohach was not the first corroborative statement about the incident and, therefore, was inadmissible under MRE 803A, although it could be, and was, admitted under a different hearsay exception. See *People v Katt*, 468 Mich 272, 296-297; 662 NW2d 12 (2003). The victim's statement to her aunt was the first corroborative statement, and it led to the victim's statement to Bohach. See *People v Douglas*, 496 Mich 557, 575; 852 NW2d 587 (2014) (stating that the child's "disclosure of the alleged fellatio" to a forensic interviewer "was not her first corroborative statement regarding that incident" because she had "previously disclosed that incident" to another person, which led to the child's interview with the forensic interviewer). Accordingly, because the trial court properly admitted the aunt's statement under MRE 803A, trial counsel was not ineffective for failing to object. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Next, defendant argues that trial counsel was ineffective for failing to object to several instances of prosecutorial misconduct. First, defendant argues that the prosecutor improperly elicited testimony from Solomon in order to bolster the credibility of the victim. Specifically, defendant contends that Solomon's testimony regarding why the victim may lie about certain aspects of the sexual assault bolstered the victim's credibility. Because the issue of whether a prosecutor elicited testimony to bolster another witness's credibility "is as much an evidentiary issue as it is a prosecutorial misconduct matter," our focus is "on whether the prosecutor elicited the testimony in good faith." *People v Dobek*, 274 Mich App 58, 70-71; 732 NW2d 546 (2007).

-5-

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *Id*. However, we cannot conclude that Solomon's testimony amounted to offering an opinion on the victim's credibility. Solomon testified that the victim provided false details to her during their forensic interview. Solomon explained that, based on her experience and knowledge of interviewing sexually abused children, some children incorporate false details into their descriptions of the abuse "to defend themselves or as a way to prove that something wasn't their fault." Solomon did not offer an opinion as to whether the victim in this case was lying, but instead provided a generality of behavior she had witnessed in the past. Moreover, because the victim lied during the forensic interview, Solomon's testimony was relevant to explain why someone in the victim's position may lie, see MRE 401, and we can discern no potential risk of unfair prejudice as a result of Solomon's testimony, see MRE 403. Accordingly, we cannot conclude that the prosecutor's questioning of Solomon in this regard was in bad faith or otherwise improper.[5]

Next, defendant argues that the prosecutor also elicited testimony from Andrea Young, an expert in forensic biology who testified regarding Y-STR DNA testing, that unfairly bolstered the victim's credibility. Again, we cannot conclude that the prosecutor's questioning of Young was in bad faith or otherwise improper. A prosecutor's conduct "must be considered in light of defense counsel's comments." *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001). On direct, Young testified that she would statistically expect a match for defendant's Y-STR haplotype to be 1 in 3,067 random males, 1 in 1,250 African-American males, and 1 in 1,220 Hispanic males. On cross-examination, defense counsel questioned Young regarding the statistical probability of a typical DNA match, and Young indicated that the probability of a

---

[5] On a related note, we reject defendant's contentions that the prosecutor improperly referenced Solomon's testimony during closing arguments and sentencing. Defendant argues that the prosecutor referenced facts not in evidence by discussing Solomon's testimony during closing. However, Solomon testified to her statements during trial, and therefore, her statements were in evidence. See *People v Johnson*, 315 Mich App 163, 201; 889 NW2d 513 (2016) (holding that there was no prosecutorial misconduct where the prosecutor's arguments "were supported by the facts (or reasonable inferences from these facts) in evidence"). Further, at the sentencing hearing, defendant objected to the scoring of offense variable (OV) 4 on the basis that the record failed to show that the victim endured a psychological injury necessitating treatment. See MCL 777.34. The prosecutor responded that the victim's impact statement, provided by the victim's father, reported that the victim was in counseling, the mention of defendant's name terrified her, and she had retrieved a stock pot during defendant's assault to attempt to protect herself. Additionally, the prosecutor referred to Solomon's testimony concerning the concept of fantastical statements, specifically "that when children have a problem not knowing how to defend themselves, [they] sometimes make things up to explain why they weren't able to defend themselves." The prosecutor summarized that all of these factors were "indicative of some psychological issues that [the victim] will definitely need treatment for." We conclude that the prosecutor properly referenced Solomon's general testimony regarding fantastical statements because it strengthened her assertion with respect to the proper scoring of OV 4. MCL 777.34.

match could be in the "quadrillions." In response, the prosecutor asked Young whether the Y-STR match was nonetheless statistically significant, to which Young responded in the affirmative. We cannot conclude that this amounted to prosecutorial misconduct in light of defense counsel's argument. See *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996) ("[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.").

Next, defendant argues that the prosecutor erred by arguing facts not in evidence when he stated that the victim's story remained consistent over time. After reviewing the relevant portions of the record, we conclude that the prosecutor accurately summarized the evidence and reasonably argued that the jury should believe the victim because she consistently repeated the major details of the assault. See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (stating that prosecutors are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case).

Defendant also argues that the prosecutor's statement about children and sex crimes improperly appealed to the jurors' civic duty and denigrated defendant. "[A] prosecutor may not urge the jurors to convict the defendant as part of their civic duty." *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003). Prosecutors must also "refrain from denigrating a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 283. After reviewing the prosecutor's comments in context, we cannot agree with defendant's description of the prosecutor's argument. The prosecutor was making a larger point about the "sad reality" that children are sometimes the victims of sex crimes. This argument was not intended to play on the emotions of the jury, but rather it was urging jurors to consider the uncomfortable reality that these crimes happen and may only be witnessed by the child that was the victim of the criminal act. These remarks were in no way intemperate or prejudicial so as to denigrate defendant. Moreover, we note that "[e]motional language may be used during closing argument and is an important weapon in counsel's forensic arsenal," *People v Ullah*, 216 Mich App 669, 679; 550 NW2d 568 (1996) (citation and quotation marks omitted), and "[a] prosecutor need not confine argument to the blandest of all possible terms," *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001) (citation and quotation marks omitted). The prosecutor's remarks fell within the boundaries regarding the proper use of emotional language and did not rise to the level of prosecutorial misconduct.[6] Accordingly, because none of the challenged instances constituted prosecutorial misconduct, trial counsel was not ineffective in failing to object. *Ericksen*, 288 Mich App at 201.

Next, defendant argues that the trial court erred in instructing the jury concerning the elements of the CSC I charge. However, defense counsel waived any challenge to the final instructions by affirmatively expressing satisfaction with the court's instructions. *People v*

---

[6] Defendant also argues that the prosecutor's comments were an expression of her "personal opinions of defendant[']s guilt." Although a prosecutor must not "express their personal opinion of a defendant's guilt," *Bahoda*, 448 Mich at 282-283, we see no way that the prosecutor's remarks could be interpreted as expressing an opinion or belief as to defendant's guilt.

*Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Even if we were to address this issue, defendant would not be entitled to relief. The trial court instructed the jury regarding the elements of CSC I involving cunnilingus in accordance with M Crim JI 20.1(1), (2)(c), and (2)(d), and M Crim JI 20.30b. The instructions also correctly took into account the statutory definitions of "sexual penetration" as including cunnilingus, MCL 750.520a(r), and the elements of CSC I in MCL 750.520b(1)(a), which defines the relevant elements as a "sexual penetration with another person and" the victim was "under 13 years of age." Because the jury instructions accurately described the elements of CSC I, we find no error.[7]

Next, defendant argues that he was not informed of his constitutional rights before he was interviewed by police, which resulted in defendant involuntarily waiving his right to counsel and providing oral swabs. Because defendant failed to preserve this issue, he has the burden of establishing plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights," meaning "that the error affected the outcome of the lower court proceedings." *Id*.

Detective Charles Younkin testified that defendant came to the police station in September 2013 and was interviewed. According to Detective Younkin, he watched defendant sign a waiver of constitutional rights form. After defendant waived his rights, the detective took a swab of defendant's mouth. Detective Younkin testified that he believed that defendant understood his constitutional rights and voluntarily waived his right to counsel at the interview. A criminal defendant must knowingly and voluntarily waive important constitutional rights. See *People v Garwood*, 205 Mich App 553, 557-558; 517 NW2d 843 (1994). Based on the available record, we conclude that defendant knowingly and voluntarily waived his constitutional rights. Defendant urges us to reach the opposite conclusion because, defendant contends, Detective Younkin's testimony was false. However, apart from his bare assertions, defendant has failed to provide any documentary or other supporting evidence for this claim. Accordingly, defendant has failed to establish plain error, let alone plain error that affected his substantial rights.

Lastly, defendant argues that the police failure to preserve the recording of the detective's interview with defendant violated MCL 763.8(2).[8] Assuming that the police erred in failing to

---

[7] Defendant also argues that there was no evidence of cunnilingus other than the victim's testimony. However, the credibility of the victim's testimony was for the jury to decide, *People v Hardiman*, 466 Mich 417, 431; 646 NW2d 158 (2002), and "[t]he testimony of a victim need not be corroborated" in a prosecution for CSC I, MCL 750.520h. Moreover, the victim's testimony *was* corroborated: other persons testified to the nature of the sexual assault in this case and an Y-STR haplotype matching defendant's was found on a swab from the victim's vagina.

[8] MCL 763.8(2) states,

A law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation. A major

record or failing to preserve a recording of the interview, the remedy for that failure is prescribed in MCL 763.9, which provides,

> Any failure to record a statement as required under [MCL 763.8] or to preserve a recorded statement does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible. However, unless the individual objected to having the interrogation recorded and that objection was properly documented under [MCL 763.8(3)], the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement.

Thus, any error in failing to preserve the recording of defendant's interview would not prevent Detective Younkin from testifying. Moreover, although the jury was not instructed as specified in MCL 763.9, the prosecution did not introduce the content of any statements that defendant made during the interview, and defendant did not otherwise challenge the events from the interview at trial. Therefore, failure to provide the jury instruction did not affect defendant's substantial rights. *Carines*, 460 Mich at 763.

  Affirmed.

         /s/ Colleen A. O'Brien
         /s/ Kathleen Jansen
         /s/ Christopher M. Murray

---

felony recording shall include the law enforcement official's notification to the individual of the individual's Miranda rights.

As used in MCL 763.8(2), " 'Major felony' means a felony punishable by imprisonment for life, for life or any term of years, or for a statutory maximum of 20 years or more[.]" MCL 763.7(d). CSC I "committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years," MCL 750.520b(2)(b), and therefore is a major felony for purposes of MCL 763.8(2).