*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 7, 2023

Plaintiff-Appellee,

v

No. 358479
Monroe Circuit Court

DARIUS ANTHONY HINES,

LC No. 2020-245722-FH

Defendant-Appellant.

Before: GARRETT, P.J., and K. F. KELLY and HOOD, JJ.

PER CURIAM.

Defendant Darius Anthony Hines appeals as of right his jury-trial convictions of two counts of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), second offense, MCL 333.7413(1); and one count of maintaining a drug house, MCL 333.7405(1)(d), second offense. The trial court sentenced Hines as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 75 to 480 months' imprisonment for each delivery of cocaine conviction and 75 to 180 months' imprisonment for his maintaining a drug house conviction.

This case returns to us after we remanded for an evidentiary hearing related to Hines's claims of ineffective assistance of counsel during plea bargaining and request for a jail credit. The trial court granted the motion for jail credit but denied Hines's motion for a new trial.[1] Hines challenges the trial court's exclusion of a witness's affidavit at the evidentiary hearing and the denial of his ineffective-assistance claims. He also contests the scoring of the sentencing guidelines. We affirm.

---

[1] Because the trial court granted Hines's request for jail credit, his argument about this issue on appeal is now moot, and we decline to consider it. See *People v Smith*, 502 Mich 624, 631; 918 NW2d 718 (2018) ("A dispute is moot if no controversy exists and any judgment on the matter would lack practical legal effect.").

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Hines twice sold crack-cocaine to a confidential informant, Patrick Rice, from the apartment of Jodi McComas in January 2020. Hines was arrested and criminally charged. Hines's first appointed counsel obtained a minimum sentence evaluation with a 28-month cap pursuant to *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).[2] Hines refused to consider the plea deal, said he never asked for a *Cobbs* evaluation, and asked for a new attorney. The trial court allowed Hines's first attorney to withdraw, and a second attorney was appointed for Hines. Hines's second attorney shared plea offers from the prosecution with him, but Hines continued to insist that he wanted to go to trial. This second attorney later withdrew over a conflict of interest with a key witness in the case, so Hines was appointed a third attorney, James Bartlett. Across multiple pretrial hearings, Bartlett continued to relay Hines's requests to go to trial. At the final pretrial hearing in March 2021, the trial court reiterated that this was the deadline for any plea agreements. Bartlett again informed the trial court, with Hines present, that there would be no plea.

Hines was represented at trial by Bartlett, and was convicted and sentenced as previously noted. Hines filed this appeal, but while it was pending, he moved the trial court for a new trial or a *Ginther* hearing.[3] Hines argued that Bartlett was ineffective for failing to properly advise him about whether to accept a plea deal. Hines primarily alleged that Bartlett told him there was a 98% chance he would be acquitted at trial. In support, Hines offered affidavits from himself, his girlfriend Ebony Bias, and his aunt Stephanie Woods. Hines also challenged the assessment of 10 points for offense variable (OV) 14, MCL 777.44, in calculating his minimum sentence guidelines range. The trial court denied Hines's motion for a new trial or a *Ginther* hearing, finding that Hines's claim was patently unbelievable. The trial court also determined that OV 14 was correctly scored at sentencing.

Hines then moved this Court to remand for the trial court to hold a *Ginther* hearing, which we granted.[4] Before the *Ginther* hearing could be held, Bias passed away. Hines therefore moved the trial court to admit Bias's affidavit as evidence at the hearing under the residual exception to the hearsay rule, MRE 804(b)(7). The trial court denied the motion, finding the affidavit lacked circumstantial guarantees of trustworthiness. At the *Ginther* hearing, Bartlett, Woods, and Hines

---

[2] A *Cobbs* evaluation is an on-the-record pretrial statement by the judge about "the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." *Cobbs*, 443 Mich at 283. A defendant who pleads guilty in reliance on this evaluation "has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Id.*

[3] A *Ginther* hearing is an evidentiary hearing in the trial court that allows a defendant to develop the factual record in support of an ineffective-assistance claim. *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973). See also *People v Randolph*, 502 Mich 1, 15; 917 NW2d 249 (2018) ("[I]n Michigan, a defendant can seek an evidentiary hearing in the trial court on defense counsel's performance and then bring an ineffective-assistance claim on direct appeal with the benefit of the augmented hearing record.").

[4] *People v Hines*, unpublished order of the Court of Appeals, entered August 5, 2022 (Docket No. 358479).

testified about the plea offers and Bartlett's representation in the case. Finding that Hines's testimony was not credible, the trial court again denied his motion for a new trial on the basis of ineffective assistance of counsel. Back from remand, the parties filed supplemental briefs, and the case is now before us for review.

## II. STANDARDS OF REVIEW

Hines's arguments on appeal involve the trial court's decisions to (1) exclude Bias's affidavit from evidence, (2) reject Hines's ineffective assistance of counsel claims, and (3) deny Hines's challenge to the scoring of the sentencing guidelines. First, "we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Abcumby-Blair*, 335 Mich App 210, 238; 966 NW2d 437 (2020). But de novo review means that "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Second, whether a defendant received the effective assistance of counsel is "a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016) (quotation marks and citation omitted). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). Third and finally, we review the trial court's factual findings under the sentencing guidelines for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

## III. AFFIDAVIT OF UNAVAILABLE WITNESS

Hines contends that the trial court erred by excluding Bias's affidavit as evidence during the *Ginther* hearing. In Hines's view, the affidavit was admissible under MRE 804(b)(7)'s catchall hearsay exception for statements by an unavailable witness.

Under the Michigan Rules of Evidence, hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay evidence is inadmissible unless it falls within a listed exception in the rules. MRE 802. As relevant here, "MRE 804(b) enumerates several exceptions to the rule prohibiting hearsay evidence that apply when a declarant is deemed 'unavailable as a witness' pursuant to MRE 804(a)." *People v Duncan*, 494 Mich 713, 724; 835 NW2d 399 (2013). Bias was unavailable as a witness at the *Ginther* hearing because of her death, so Hines argues that the trial court should have admitted her affidavit into evidence under MRE 804(b)(7).

In pertinent part, MRE 804(b)(7) states the following is "not excluded by the hearsay rule if the declarant is unavailable as a witness":

> A statement not specifically covered by any of the foregoing exceptions but having
> equivalent circumstantial guarantees of trustworthiness, if the court determines that

-3-

(A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

"The Michigan Rules of Evidence contain two residual exceptions: MRE 803(24) and MRE 804(b)(7)." *People v Katt*, 468 Mich 272, 279; 662 NW2d 12 (2003). These catchall hearsay exceptions contain identical language, the only difference being that MRE 803(24) applies when the declarant is available as a witness. Our Supreme Court in *Katt*, 468 Mich at 279, while analyzing MRE 803(24), described the elements for the admission of evidence under a residual hearsay exception:

> (1) [The statement] must have circumstantial guarantees of trustworthiness equal to the categorical exceptions, (2) it must tend to establish a material fact, (3) it must be the most probative evidence on that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice.[5]

"The first and most important requirement is that the proffered statement have circumstantial guarantees of trustworthiness equivalent to those of the categorical hearsay exceptions." *Id*. at 290. "There is no complete list of factors that establish whether a statement has equivalent guarantees of trustworthiness," but "courts should consider all factors that add to or detract from the statement's reliability." *Id*. at 291. This Court has provided a nonexhaustive list of factors to consider when analyzing whether a statement has circumstantial guarantees of trustworthiness:

> (1) [T]he spontaneity of the statements, (2) the consistency of the statements, (3) lack of motive to fabricate or lack of bias, (4) the reason the declarant cannot testify, (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence, (6) personal knowledge of the declarant about the matter on which he spoke, (7) to whom the statements were made . . . , and (8) the time frame within which the statements were made. [*People v Geno*, 261 Mich App 624, 634; 683 NW2d 687 (2004) (quotation marks and citations omitted; alteration in original).]

The only factor not to be considered is corroborative evidence. *Katt*, 468 Mich at 291-292.

Hines moved for a new trial because of ineffective assistance of counsel during the plea-bargaining stage of proceedings. He claimed that Bartlett said there was a 98% chance that Hines would be acquitted at trial, and that this overconfidence led Hines to reject all plea offers provided by the prosecution. Hines provided an affidavit from Bias, in which she corroborated the claim that Bartlett stated Hines had a 98% chance of acquittal. After Bias passed away, Hines moved the trial court to admit her affidavit as evidence at the *Ginther* hearing under MRE 804(b)(7). He

---

[5] Although *Katt* involved MRE 803(24), its reasoning applies with equal force to MRE 804(b)(7), considering the identical language used in each catchall exception.

argued that Bias was unavailable and her affidavit fit all the elements for admission under MRE 804(b)(7). Pertinently, Hines claimed Bias's affidavit had circumstantial guarantees of trustworthiness because it was notarized and made under penalty of perjury. The prosecution, on the other hand, claimed Bias's affidavit was untrustworthy on its face, considering the document listed her last name as Vias instead of Bias. The affidavit began with the following acknowledgment:

> NOW COMES Ebony Vias, who states the following:
>
> 1. My name is Ebony Vias. I am the girlfriend of Darius Anthony Hines, the defendant in the above-captioned case.

In excluding the affidavit, the trial court agreed with the prosecution and noted that Bias's signature, shown below, appeared to have been altered to match the statement that the declarant's last name was Vias, not Bias.

> Upon punishment of perjury, I swear to the truthfulness of these statements.
>
> _Ebony Vias_

On appeal, Hines contends that the trial court erred by finding that Bias's affidavit did not have circumstantial guarantees of trustworthiness. We conclude that the trial court did not abuse its discretion when it denied Hines's motion to admit Bias's affidavit as evidence during the *Ginther* hearing.

As noted earlier, when considering whether a hearsay statement has circumstantial guarantees of trustworthiness, a trial court can and should consider all factors it finds relevant, other than corroborating evidence. *Katt*, 468 Mich at 291-292. The affidavit at issue begins by stating, "My name is Ebony Vias," and ends with "[u]pon punishment of perjury, I swear to the truthfulness of these statements." The parties agree that the declarant's legal name was Ebony Bias. Thus, the affidavit begins with a false statement and ends with a claim that Bias swears she is telling the truth under the threat of perjury. The trial court also found that Bias or someone else attempted to change Bias's signature so the "B" would look like a "V." This finding was not clearly erroneous, as it was reasonably supported by observing the scribbled lettering in the signature. The trial court properly determined that these factors weighed heavily against Bias's affidavit having circumstantial guarantees of trustworthiness.

Hines characterizes the misspelling of Bias's name as a "typographical error" and argues that Bias, as a non-lawyer, "had no reason to think the typo was significant" when she signed the affidavit. We cannot accept Hines's speculation that Bias "had no reason" to question or correct the misspelling of her name in an affidavit that she purportedly signed and swore was truthful. As the trial court reasonably explained when excluding the affidavit, if "you can't be honest about your name, I can't find that any other aspect of this [affidavit] is trustworthy." The trial court's conclusion that the affidavit lacked sufficient guarantees of trustworthiness because of the false

statement about Bias's name and the dubious signature was well within the range of reasonable outcomes.

Although the issues with Bias's last name and signature were the most relevant factors considered by the trial court, other factors supported the untrustworthy nature of the affidavit. First, because the statements were made in an affidavit prepared by counsel, they were not spontaneous. *Geno*, 261 Mich App at 634. Second, Bias did not lack motive to fabricate her statement; she was Hines's girlfriend and therefore had reason to support his claims about Bartlett. *Id*. In sum, because several factors established that Bias's affidavit lacked circumstantial guarantees of trustworthiness under MRE 804(b)(7), the trial court's decision to exclude the affidavit was not an abuse of discretion.

Hines additionally argues that the trial court's analysis was faulty because the rules of evidence are "relaxed" during postconviction proceedings, such as a *Ginther* hearing. Hines is generally correct that, when reviewing a motion for a new trial, because "the defendant's guilt or innocence is not at issue, some procedures are permissible which would not be acceptable at trial." *People v Barbara*, 400 Mich 352, 411; 255 NW2d 171 (1977). "For example, the motion may be argued on the basis of affidavits, which, of course, would not be possible at trial." *Id*. Even so, though, the Court in *Barbara* did not state that the rules of evidence are inapplicable in postconviction proceedings. Nor does Hines explain how a "relaxed" standard for applying the rules of evidence at a *Ginther* hearing would function, or how we would review whether evidence was properly admitted under this "relaxed" standard. Indeed, in *Barbara*, which was about the use of polygraph results, the Court stated a trial court may still exercise its discretion when deciding whether to consider such results at a postconviction hearing on a motion for new trial. *Id*. at 412. In this case, the trial court exercised its discretion, applied MRE 804(b)(7), and declined to consider Bias's affidavit during the *Ginther* hearing. In light of the serious concerns discussed earlier about the trustworthiness of the affidavit, even under a "relaxed" standard of evidence for a postconviction hearing, the trial court did not abuse its discretion by denying Hines's motion to admit the affidavit under MRE 804(b)(7). At best, Hines has shown that the trial court's ruling was a close call, and "[a] trial court's decision on a close evidentiary decision does not amount to an abuse of discretion." *Geno*, 261 Mich App at 632.

Although the absence of circumstantial guarantees of trustworthiness is dispositive, the parties also argue about whether Bias's affidavit was "the most probative evidence on that fact that the offering party could produce through reasonable efforts . . . ." *Katt*, 468 Mich at 279. Our Supreme Court has described this element as a "best evidence requirement" and "a high bar" that "will effectively limit use of the residual exception to exceptional circumstances." *Id*. at 293 (quotation marks and citation omitted). "For instance, nonhearsay evidence on a material fact will nearly always have more probative value than hearsay statements, because nonhearsay derives from firsthand knowledge." *Id*. As a result, "the residual exception normally will not be available if there is nonhearsay evidence on point." *Id*.

Hines sought to admit Bias's affidavit because it corroborated his claim that Bartlett said Hines had a 98% chance of acquittal at trial. During the *Ginther* hearing, there were two forms of nonhearsay testimony on the same topic. Bartlett testified that he did not make this statement, and Hines testified that Bartlett did. As nonhearsay, Hines's testimony was more probative of the disputed fact at issue than Bias's affidavit, which was hearsay. See *Katt*, 468 Mich at 293. Thus,

-6-

because there was nonhearsay evidence available on the exact claim covered in Bias's affidavit, Hines failed to meet the third element for admissibility under MRE 804(b)(7). *Id*. For this added reason, the trial court did not abuse its discretion when it denied Hines's motion to admit Bias's affidavit as evidence during the *Ginther* hearing.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Hines argues that the trial court should have granted his motion for a new trial because of Bartlett's ineffective representation during plea negotiations.

The Michigan and United States Constitutions require that criminal defendants receive the assistance of counsel in their defense. Const 1963, art 1, § 20; US Const Am VI. To succeed on an ineffective assistance of a counsel claim, the defendant must establish (1) that "counsel's performance fell below an objective standard of reasonableness" and (2) that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), citing *Strickland v Washington*, 466 US 668, 687-688, 694-696; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Satisfying *Strickland*'s performance and prejudice prongs is no easy task: "[e]ffective assistance is strongly presumed, and the defendant bears the heavy burden of proving otherwise." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021) (quotation marks and citations omitted).

Hines argues that Bartlett was ineffective by failing to relay information about plea offers from the prosecution and by overstating Hines's chances of acquittal. "As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). Reasonable representation requires trial counsel to "provide advice during plea negotiations that is sufficient to allow the defendant to make an informed and voluntary choice between trial and a guilty plea." *Douglas*, 496 Mich at 595 (quotation marks and citation omitted). Trial counsel has a " 'critical obligation . . . to advise the client of the advantages and disadvantages of a plea agreement.' " *Id*. at 594, quoting *Padilla v Kentucky*, 559 US 356, 370; 130 S Ct 1473; 176 L Ed 2d 284 (2010). Generally speaking, to establish prejudice in the plea context, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 US at 163. As explained by our Supreme Court and the United States Supreme Court:

> Where, as here, the alleged prejudice resulting from counsel's ineffectiveness is that the defendant rejected a plea offer and stood trial,
>
>> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at 164.]

We begin with the claim that Bartlett overstated Hines's chances of success at trial by telling Hines that he had a 98% chance of acquittal at trial. During the *Ginther* hearing, Hines testified that Bartlett made this statement, while Bartlett denied doing so. The trial court considered each witness's credibility and found that Bartlett did not make this statement. On the record before us, there is no reason to disregard the trial court's determination of credibility between Hines and Bartlett. See MCR 2.613(C) ("[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.").[6] As a result, the trial court did not clearly err when it found Bartlett did not tell Hines he had a 98% chance of being acquitted. This claim of ineffective assistance of counsel therefore lacks merit.

Next, Hines argues that Bartlett otherwise misrepresented the strength of the prosecution's case because Bartlett failed to relay certain evidence that the prosecution possessed and presented at trial. Hines claims that Bartlett never told him that the prosecution had GPS location information showing Hines inside McComas's apartment building on the relevant dates and times, and photographs taken by Rice during a drug purchase that showed Hines's face. Had Bartlett given effective advice about the strength of Hines's case throughout the representation, Hines says that he likely would have taken a plea. At the *Ginther* hearing, Bartlett was not directly asked whether he told Hines before trial about the GPS location and photographic evidence. But Bartlett testified that the "bulk" of the prosecution's case was the testimony of Rice and McComas, who claimed to witness Hines selling drugs. During Rice's trial testimony, he described covertly taking two photographs of Hines at the first drug purchase. Bartlett admitted that he did not believe the prosecution's evidence was strong and that his general trial strategy was to discredit these witnesses' testimony. Hines testified that Bartlett told him that the prosecution's case rested on "two people that get high," that it was "[Hines's] word against theirs," and that there was no marked money or drugs in evidence. And Woods testified that Bartlett told her the evidence against Hines was weak and recommended against taking a plea. The trial court made no factual findings about whether Bartlett relayed the full scope of the prosecution's case to Hines.

We decline to decide whether Bartlett performed unreasonably on this ground because this ineffective-assistance claim can be resolved on the prejudice prong. See *Strickland*, 466 US at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Hines cannot establish that he was prejudiced by any alleged failure by Bartlett to accurately represent the strength of the prosecution's case. Simply put, the overall record does not support Hines's claim that he would have accepted a plea deal if Bartlett provided a more reasonable opinion of the strength of the case. Throughout pretrial proceedings, including before Bartlett's representation, Hines was insistent on going to trial. Almost immediately, Hines asked for a new appointed attorney, disapproving of counsel's representation because Hines had not asked for a *Cobbs* evaluation. Later, the trial court held several "final" pretrial hearings due to continued adjournments of the trial date resulting from the COVID-19 pandemic. But each time, the trial court reiterated that the final pretrial hearing was the deadline to accept a plea offer. And each

---

[6] Hines contends that the trial court's credibility finding is not entitled to deference because the finding was tainted by the court's failure to consider Bias's affidavit. But as explained in Section III, the trial court properly excluded this affidavit.

time, Hines's attorney told the court that he was not interested in a plea and wanted a trial date, without any hint of disagreement from Hines. At the (actual) final pretrial hearing in March 2021, this same pattern continued.

In short, the record, other than Hines's testimony at the *Ginther* hearing, contains no indication that he was interested in taking a plea deal. Instead, it was consistently evident that Hines wanted to go to trial. According to Bartlett, Hines did not believe a jury would accept the word of two "junkies" over him. Hines also insisted at the *Ginther* hearing that he was innocent of the crimes charged. In light of Hines's general attitude about plea deals, his belief a jury would not believe Rice and McComas, and his consistent claim of innocence, Hines failed to establish that there was a reasonable probability that he " 'would have accepted the plea,' " which was required to show prejudice. *Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at 164. Therefore, Hines's ineffective-assistance claim related to Bartlett's alleged misrepresentation of the strength of the prosecution's case does not warrant relief.

Finally, Hines contends that Bartlett was ineffective by failing to timely communicate a plea offer and by misrepresenting the details of that offer. Hines claims that he would have taken the plea deal had he been properly informed about it. At the *Ginther* hearing, Bartlett testified that he represented Hines for about nine months before the July 2021 trial. According to Bartlett, for the first eight months, when Hines was out on bond, he did not respond to Bartlett's telephone calls and text messages. Hines was eventually arrested on other charges in June 2021, which allowed Bartlett to have regular access to Hines. Bartlett testified that when he took over the case, he believed there was a plea offer on the table consistent with the *Cobbs* evaluation. He tried to communicate the offer to Hines, but could not remember if he succeeded because of Hines's lack of responsiveness while on bond. But Bartlett explained that when Hines was arrested for new charges in June 2021, the prosecutor removed the *Cobbs* offer as a plea option. Afterward, the prosecution offered only to have Hines plead guilty to all charges, old and new, in exchange for a sentence with a minimum of 76 months' imprisonment. Bartlett testified that he told Hines about the offer, but Hines refused to accept it. According to Bartlett, Hines wanted to go to trial and believed that he could get a better plea deal on his new charges after he was acquitted of the charges in this case. Bartlett recalled Hines getting anxious on the morning of trial and asking if he could still consider the plea offer. Bartlett, who knew the trial court's plea deadline had expired, told Hines "that ship had sailed."

Hines testified differently, claiming that he first heard about the new plea offer on the morning of trial. Up until that point, Hines believed he could still plead guilty and receive a sentence with a minimum of 18 or 24 months' imprisonment. On the morning of trial, Hines asked Bartlett if he could still take the plea deal. According to Hines, Bartlett told him for the first time that he would have to plead guilty to the crimes charged and would face a sentence of 75 months' imprisonment. Hines testified that Bartlett did not tell him the plea would finalize *both* cases against him. Hines also claimed that Bartlett did not state it was too late to take a plea deal for the present case; instead, Bartlett told Hines not to get cold feet. In denying Hines's motion for a new trial, the trial court explained that it did not believe Hines's testimony. The court stated that it never would have accepted a plea deal on the morning of trial and concluded that Hines had failed to show that the court would have adjourned the trial to allow Hines additional time to consider the offer. The court also noted that its plea deadline was the final pretrial hearing in March 2021.

To establish prejudice, Hines was required to show a reasonable probability that " 'that the court would have accepted [the] terms' " of the proposed plea deal. *Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at 164. The trial court's finding that it would not have accepted a plea deal on the morning of trial, which was when Hines testified he learned of it, was not clearly erroneous. The trial date had been adjourned several times because of the pandemic, and the record supports the court's finding that the final pretrial hearing in March 2021 was the deadline for accepting a plea offer. At this hearing, the court plainly stated that it was "the plea deadline." But once more, Bartlett told the court that there was no plea and asked to set the matter for trial, which the court did. Considering the trial court's findings, along with its determination that Hines's testimony was not credible, Hines failed in his burden to show that there was a reasonable probability that the trial court would have accepted the terms of the plea offer resolving both the old and new charges. That is, Hines cannot establish that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 US at 163. Thus, because Hines cannot prove prejudice, he is not entitled to reversal on this ineffective-assistance claim.

In sum, the trial court did not err when it denied Hines's motion for a new trial on the basis of ineffective assistance of counsel.[7]

## V. OV 14

Finally, Hines argues that the trial court improperly scored OV 14 and that this error entitles him to resentencing.

Under the sentencing guidelines, the trial court's factual findings must be supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438. The trial court may consider all record evidence when scoring offense variables. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The court may also draw "reasonable inferences arising from the record evidence" to sustain the scoring of an offense variable. *People v Barnes*, 332 Mich App 494, 499; 957 NW2d 62 (2020) (quotation marks and citation omitted).

"OV 14 addresses the role of the offender, and the trial court must assess 10 points if '[t]he offender was a leader in a multiple offender situation.' " *People v Baskerville*, 333 Mich App 276, 300; 963 NW2d 620 (2020) (alteration in original), quoting MCL 777.44(1)(a). If the offender was not a leader in a multiple offender situation, zero points should be assessed. MCL 777.44(1)(b). "The entire criminal transaction should be considered when scoring [OV 14]." MCL 777.44(2)(a). Because the Legislature did not define "leader" for purposes of OV 14, this Court

---

[7] In his original brief on appeal, Hines asked us to remand for a *Ginther* hearing if we did not believe reversal was warranted. We did so. Thus, this original request for a *Ginther* hearing is undoubtedly moot. See *People v Smith*, 502 Mich 624, 631; 918 NW2d 718 (2018). And "[i]t is well established that a court will not decide moot issues." *Id.* (quotation marks and citation omitted). In his supplemental brief on appeal, Hines states we could remand for an additional *Ginther* hearing if we needed more evidence about the plea offer to resolve both cases against him. Interestingly, Hines also asserts that "[t]he evidentiary hearing record is sufficient to decide the issue . . . ." Considering this concession, and our agreement that the record is sufficient for our review, we see no reason to remand for another *Ginther* hearing.

has turned to dictionary definitions to fill the gap. *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014). This Court explained that "a 'leader' is defined in relevant part as 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group,' " and "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *Id.*, quoting *Random House Webster's College Dictionary* (2001). To identify a leader in a multiple-offender situation, "a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (quotation marks and citation omitted).

During trial, Rice testified that he originally contacted McComas about purchasing drugs. She told Rice to come to her apartment, where he could buy crack-cocaine. Once inside McComas's residence, Rice recognized Hines and spoke to him in a friendly manner. After recognizing Rice and Hines had a relationship, McComas said Rice should deal directly with Hines. Rice stated that he gave Hines the money for the crack-cocaine, but Hines did not hand Rice the drugs directly. Instead, Hines handed the drugs to McComas, who took a share before passing them to Rice. When Rice contacted McComas on a separate occasion to buy more crack-cocaine, McComas said Rice should set up the deal with Hines because they knew each other. Rice did so, came to McComas's apartment, and again gave Hines money for crack-cocaine. Rice testified that Hines again gave the drugs to McComas, and she took a share before passing them to Rice.

McComas testified that she lived in the apartment with her son, and Hines used the residence as a location to sell drugs. McComas characterized herself as the "middleman" in the situation, getting a cut of the drugs because Hines was using her apartment to sell them. McComas did not get the money when Rice purchased drugs; the money went directly to Hines. Additionally, when Rice asked McComas if she could help him buy drugs, she did not sell them to Rice herself. Instead, she asked Rice to come to her apartment where Rice could purchase the crack-cocaine from Hines.

The trial testimony of Rice and McComas supported the trial court's conclusion that Hines was the leader in the drug-selling operation with McComas.[8] Hines was the person in charge of the transaction—he accepted the money and handed out the crack-cocaine. McComas allowed Hines to use her apartment to run the operation in exchange for receiving some portion of the drugs sold. Thus, Hines was "a guiding or directing head" of the multiple-offender enterprise. *Rhodes*, 305 Mich App at 90 (quotation marks and citation omitted). Put differently, Hines was "directing[] or conducting" the operation taking place in McComas's apartment. *Id.*

Hines argues that McComas was the leader of the operation because "[s]he housed the operation, she arranged the deals, and she received a percentage of every transaction." But although McComas acted first by being the initial contact person for Rice, there is no indication she "gave directions" to Hines or was "a primary causal or coordinating agent" in the enterprise. *Dickinson*, 321 Mich App at 22 (quotation marks and citation omitted). Instead, the record

---

[8] In exchange for her testimony, McComas agreed to plead guilty to maintaining a drug house and had all other related charges dismissed.

supported the trial court's conclusion that Hines was in charge because, absent his involvement and access to drugs to sell, McComas would have had no reason to coordinate with Rice about his purchase of drugs. For comparison, the leader of a fast food restaurant is not the cashier because they speak to the customer first. The leader is the manager, who instructed the cashier to be at the post, greet customers, and exchange money for goods. Similarly, Hines was the leader of the multiple-offender scheme involving McComas even though he did not speak to Rice first.

As a final point, the trial court recalled hearing the testimony of McComas and, judging her credibility and demeanor, believed there was "no chance" McComas was in charge of the operation or that Hines was working for her. When addressing OV scores, "[w]e defer to the trial court's assessment of witnesses' credibilities, to the extent such assessments are relevant . . . ." *People v Ziegler*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355697); slip op at 3. Thus, we defer to the trial court's credibility-based finding that McComas was not the leader in the situation. Because only one person may be considered the leader of a two-offender operation, *Baskerville*, 333 Mich App at 300, the trial court properly concluded that Hines was the leader. For these reasons, the trial court did not clearly err when it determined that a preponderance of the evidence supported assessing 10 points for OV 14.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Noah P. Hood