*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JEFFREY STEVEN DENBOER,

       Defendant-Appellant.

UNPUBLISHED
June 13, 2024

No. 364183
Kent Circuit Court
LC No. 20-006090-FC

Before: RICK, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (victim under 13 years of age, defendant 17 years of age or older); one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (victim under 13 years of age, defendant 17 years of age or older); and three counts of CSC-II, MCL 750.520c(1)(b) (defendant related to victim). The trial court sentenced defendant to serve 25 to 40 years' imprisonment for CSC-I and concurrent terms of 10 to 15 years' imprisonment for each count of CSC-II. We affirm.

## I. FACTS

This case stems from allegations of sexual abuse against defendant by his adoptive daughters, ND and TD. At the time of the allegations, ND and TD lived with their adoptive mother and only visited defendant every other weekend. After ND and TD returned to their mother's house after a weekend spent with defendant, they disclosed that defendant had been touching them inappropriately. Their mother reported this to the police immediately, and ND and TD were interviewed the same day by Kent County Sheriff's Department Deputy Sawyer Christensen.

ND revealed to Deputy Christensen that the sexual abuse perpetrated against her had been recurring for approximately a year and that she was never penetrated. TD disclosed that the sexual abuse perpetrated against her had been recurring for approximately two years but that she was penetrated. Deputy Christensen reported the allegations to Child Protective Services, and Kent County Sheriff's Office Detective Sergeant Matt Hooker was assigned to investigate the allegations. Detective Hooker interviewed defendant about the allegations, during which

-1-

defendant initially denied wrongdoing before shifting to provide ambivalent answers about the allegations, including, "I don't think so," and "I believe not." Defendant was subsequently arrested and charged with two counts of CSC-I and four counts of CSC-II.

At trial, TD testified that the sexual abuse began when she was between the ages of 11 and 12, with the first instance involving defendant touching her breasts and genitals with his hands and digitally penetrating her vagina while she was in his bedroom. TD also testified that defendant instructed her not to speak to anyone about the incident and assured her that it was normal. After the initial abuse, TD recalled a month-long lull before she was subjected to abuse every time she visited defendant's home. TD testified that, during each instance of abuse, defendant would touch the inside and outside of her vagina with his hands, touch her breasts with his hands and mouth, and make her touch herself. TD further testified that she did not disclose the abuse earlier because defendant led her to believe that it was normal, and she feared defendant because he was verbally and physically abusive to her and her siblings.

ND testified that the sexual abuse began when she was in eighth grade and involved defendant rubbing her upper thighs with his hands. ND also testified that defendant instructed her not to tell anyone about what occurred and assured her it was normal. ND noted that the abuse almost always occurred in defendant's bedroom and took place about half the time when she went to defendant's home.

At the end of testimony, the prosecution dismissed the second CSC-I count, and the jury found defendant guilty on all remaining counts. The trial court sentenced defendant to serve 25 to 40 years' imprisonment for the CSC-I conviction and concurrent terms of 10 to 15 years' imprisonment for the four CSC-II convictions.

After filing this appeal, defendant moved the trial court for a new trial on the basis of ineffective assistance of counsel, arguing that defense counsel performed deficiently by failing to consult with or retain an expert witness to testify about the concept of suggestibility. The trial court conducted an evidentiary hearing on the matter, during which defense counsel testified that his strategy was to focus on the victims' credibility issues, motive to lie, and changing stories; the incomplete investigation; and the lack of physical evidence to argue that the prosecution failed to prove, beyond a reasonable doubt, that defendant was guilty. Defense counsel also sought to diminish the impact of the prosecution's expert witness, Thomas Cottrell, by attacking his credibility and distancing his testimony from the ultimate issues to be decided by the jury by having him admit that he could not testify in absolutes nor could he determine whether ND and TD were being truthful. Defense counsel explained that retaining an expert witness would have undermined his trial strategy. At the conclusion of the hearing, the trial court determined that this constituted sound and reasonable trial strategy and, therefore, defendant could not establish ineffective assistance of counsel. Defendant now appeals.

## II. ANALYSIS

### A. CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE

Defendant argues that his constitutional right to present a defense was violated by the trial court's evidentiary ruling to exclude his recorded police interview. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). In the trial court, defense counsel argued that the entirety of defendant's recorded police interview was admissible under MRE 106. On appeal, defendant argues that the trial court's ruling to exclude defendant's remaining statements from the interview violates his constitutional right to a fair trial and to present a defense. To the extent defendant argues an error on a different basis than that argued below, this issue is not preserved. *Id*.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). However, a ruling on the admissibility of evidence "frequently involves a preliminary question of law, such as whether a rule of evidence or statute precludes the admission of the evidence." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). Questions of law are reviewed de novo. *Id*. Likewise, "[w]hether a defendant was denied his constitutional right to present a defense is a question of law we review de novo." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). However, when an issue alleging constitutional error is not preserved, we review the issue "for plain error affecting a defendant's substantial rights." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). A plain error "affected the defendant's substantial rights if (1) there was an error, (2) the error was clear or obvious, and (3) the error prejudiced the defendant." *Id*. at 78-79. A defendant is prejudiced by the error if "the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"A criminal defendant has a state and federal constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002), citing Const 1963, art 1, § 13; US Const, Ams VI and XIV. "Although the right to present a defense is a fundamental element of due process, it is not an absolute right." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984). "The defendant must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). Therefore, "the right to present a defense extends only to relevant and admissible evidence." *Id*. (quotation marks and citation omitted).

A common basis upon which relevant evidence is excluded is the bar on hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).[1] "The admission of hearsay evidence is disfavored because it is difficult, if not impossible, for the trier of fact to assess the reliability of hearsay statements or of the hearsay declarant." *People v Dhue*, 444 Mich 151, 160; 506 NW2d 505 (1993), abrogated in part on other grounds by *People v Taylor*, 482 Mich 368,

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). This opinion relies on the version of the rules in effect at the time of trial.

374; 759 NW2d 361 (2008). For that reason, "[h]earsay is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). However, when "constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

In this case, defendant argues that he was denied his constitutional right to present a defense when the trial court made an evidentiary ruling to exclude admission of defendant's entire recorded interview with law enforcement. During the second day of trial, the prosecution called Detective Hooker, who conducted defendant's interview with police, to testify. The prosecution elicited information about statements that defendant made during his interview, including the fact that defendant provided ambivalent answers when questioned about the sexual abuse perpetrated against ND and TD. Detective Hooker testified that, in response to questions posed to defendant about whether the allegations were truthful, defendant provided answers such as "I believe not" and "I don't think so." During cross-examination, defense counsel attempted to inquire into Detective Hooker's act of "cherry picking" a few of defendant's statements during his interview to paint him in a poor light. When defense counsel questioned Detective Hooker about whether defendant denied the allegations during his interview, the prosecution objected on hearsay grounds. After a brief bench conference off the record, defense counsel moved on to a different line of questioning. After Detective Hooker's testimony concluded, outside the presence of the jury, the trial court noted on the record that defense counsel sought to introduce defendant's entire recorded statement to police under MRE 106 on the basis that the prosecution elicited information that defendant stated during the interview on direct examination. The trial court concluded, however, that MRE 106 was inapplicable because the prosecution did not introduce a writing or recorded statement; rather, defendant's statements during his interview were introduced through the recollection of a witness from a conversation that just so happened to be recorded.

We conclude that the trial court properly analyzed the admissibility of the entirety of defendant's statements made during his interview with police. Although this evidence was relevant, because it tended to make the existence of a fact that was of consequence to the determination of defendant's wrongdoing more probable or less probable than it would be without the evidence, MRE 401, it constituted hearsay because it included statements "other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c). Furthermore, although there are exceptions and exclusions to the bar on hearsay, defendant fails on appeal to cite any exception or exclusion that applies to the statements that he made during his interview with police. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Indeed, "[s]uch cursory treatment constitutes abandonment of the issue." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Moreover, reviewing the exceptions and exclusions to the bar on hearsay evidence, there is no applicable exception or exclusion that would allow this evidence to bypass MRE 802 ("Hearsay is not admissible except as provided by these rules."). Therefore, in order for defendant's statements to be admissible, such statements must have been admissible through a different means.

Defense counsel attempted to argue in the trial court, and defendant renews such argument on appeal, that this evidence was admissible under MRE 106, which then provided:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

"The premise of the rule is that a thought or act cannot be accurately understood without considering the entire context and content in which the thought was expressed." *People v McReavy*, 436 Mich 197, 214-215; 462 NW2d 1 (1990). However, "MRE 106 does not automatically permit an adverse party to introduce into evidence the rest of a document once the other party mentions a portion of it." *People v Herndon*, 246 Mich App 371, 411 n 85; 633 NW2d 376 (2001). Instead, "MRE 106 logically limits the supplemental evidence to evidence that ought in fairness to be considered contemporaneously with it." *Id*. (quotation marks and citation omitted).

The trial court properly determined that defendant's entire recorded interview with police was inadmissible under MRE 106 because MRE 106 was inapplicable. "[T]he rule of completeness only pertains to the admissibility of writings or recorded statements," and, therefore, when a defendant's argument concerns the testimony of a witness, MRE 106 is irrelevant. *Solloway*, 316 Mich App at 201. In this case, the prosecution did not introduce any portion of a written or recorded statement, but rather, questioned Detective Hooker about his recollection of the interview that he conducted with defendant. The fact that defendant's police interview was recorded does not automatically implicate MRE 106 because the prosecution never sought to introduce defendant's recorded interview as evidence itself. Therefore, the trial court did not abuse its discretion by excluding the evidence and defendant cannot establish that his entire recorded interview constituted admissible evidence.

Because "the right to present a defense extends only to relevant and admissible evidence," *Solloway*, 316 Mich App at 198 (quotation marks and citation omitted), defendant cannot establish that the trial court's evidentiary ruling deprived him of his constitutional right to present a defense.

## B. THE PROSECUTION'S EXPERT WITNESS

Defendant next argues that the trial court erred by permitting the testimony of the prosecution's expert witness, Cottrell, over defense counsel's objection, because it amounted to vouching for the credibility of TD and ND. We disagree.

A preserved error in the admission or exclusion of evidence is reversed only if that error affected a defendant's substantial rights. MRE 103(a). A nonconstitutional error is presumed to be harmless, and the defendant bears the burden of showing that the error resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006). To overcome the presumption, "a defendant must persuade the reviewing court that it is more probable than not that the error in question was outcome determinative." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). "An error is outcome determinative if it undermined the reliability of the verdict." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted).

"In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *Elston*, 462 Mich at 766.

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Indeed, "it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (quotation marks and citation omitted). "Such comments have no probative value because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Id*. (quotation marks and citation omitted).

In *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995), our Supreme Court determined the scope of expert testimony in CSC cases involving child victims, holding that "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of the victim, and (3) an expert may not testify whether the defendant is guilty." However,

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Id*. at 352-353.]

Further, "the prosecution may present evidence, if relevant and helpful, to generally explain the common postincident behavior of children who are victims of sexual abuse." *Id*. at 373. In addition to this, "[t]he prosecution may, in commenting on the evidence adduced at trial, argue the reasonable inferences drawn from the expert's testimony and compare the expert testimony to the facts of the case." *Id*.

In the instant case, defendant argues that Cottrell's testimony was "crafted to buttress and improperly bolster the credibility of the claims and testimony" of ND and TD. We disagree. As our Supreme Court has noted, expert testimony about the "common postincident behavior of children who are victims of sexual abuse" is proper "if relevant and helpful." *Id*. In this case, Cottrell never opined (1) whether the sexual abuse of ND and TD actually occurred, (2) whether either victim was telling the truth, or (3) whether defendant was guilty. In fact, Cottrell's testimony established that he was unfamiliar with the parties to the case and the underlying facts. Cottrell merely testified about common behaviors of children who have been victims of sexual abuse, including the fact that delayed disclosures were not uncommon and that inconsistencies in recounting the abuse can arise on the basis of the audience to the disclosure. Such testimony is within the scope of expert testimony permitted in child sexual-abuse cases under *Peterson*. See *id*. at 352-353.

On appeal, defendant argues that Cottrell's testimony crossed a line drawn by our precedent. We disagree. In his brief, defendant primarily cites *Thorpe*, 504 Mich at 259, in which

our Supreme Court concluded that an expert witness's testimony that only 2% to 4% of children lie about sexual abuse, combined with testimony of only two specific scenarios in his experience when children might lie, neither of which was applicable to the facts of the case, was improper. Our Supreme Court determined that, under such circumstances, the expert witness's testimony could reasonably lead the jury to conclude that there was a 0% chance that the child victim lied about the sexual abuse. *Id.* Therefore, our Supreme Court held that the expert witness vouched for the victim's credibility, which was improper. *Id.*

In contrast to *Thorpe*, in this case, Cottrell did not (1) testify about specific scenarios when children might lie about sexual abuse, (2) provide estimates about the percent of children who lie about sexual abuse, or (3) infer to the jury that the victims were being truthful. Rather, Cottrell explained, in generalities, about grooming techniques that an offender may employ, the commonality of delayed disclosures, the importance of comfortability between a victim and the audience to whom they are disclosing sexual abuse, progressive disclosures, and gist memory. Therefore, although the expert witness's testimony in *Thorpe* was tantamount to opining whether the victim was being truthful, see *id.*, Cottrell's testimony in the instant case pertained to mere generalities about the behaviors of victims and offenders of child sexual abuse. Accordingly, Cottrell's testimony was not akin to *Thorpe*, and, contrary to defendant's assertion on appeal, it did not "cross the line" established by our Supreme Court. For these reasons, the trial court did not err by permitting Cottrell's expert testimony.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that defense counsel provided ineffective assistance of counsel by failing to consult with or retain an expert witness, and failing to object to the trial court's evidentiary ruling on the basis that it denied defendant his constitutional right to present a defense. We disagree.

"[A] defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). Defendant moved in the trial court for a new trial, arguing that defense counsel provided ineffective assistance by failing to consult and retain an expert witness. Thus, defendant's ineffective-assistance claim is preserved as to this argument. However, defendant's argument that counsel was ineffective for failing to object to the evidentiary ruling on his recorded police statement was not included in his motion for a new trial, and is therefore unpreserved.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews a trial court's factual findings for clear error and reviews de novo questions of constitutional law." *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). When no evidentiary hearing on the defendant's ineffective-assistance claim has been held, "there are no findings to which this Court must defer[.]" *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). In such cases, the reviewing court determines whether the defendant received ineffective assistance on the record alone. *Id.* "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then [defendant] has effectively waived the issue." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

"A defendant's right [to effective assistance of counsel] under the Michigan Constitution is the same as that guaranteed by the Sixth Amendment." *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009), citing US Const, Am VI; Const 1963, art 1, § 20. Our Supreme Court has held that the test iterated in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), is the appropriate test for analyzing claims of ineffective assistance of counsel in Michigan. See *People v Pickens*, 446 Mich 298, 318-320; 521 NW2d 797 (1994). "[E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), citing *Strickland*, 466 US at 688.

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "[T]o demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *Id*. We "cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Rather, we must determine whether defense counsel's "strategic choices [were] made after less than complete investigation." *Id*. (quotation marks and citation omitted). Notably, "any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks and citation omitted).

In the instant case, the trial court determined that defense counsel's decision to not consult with or retain an expert witness to testify about suggestibility was reasonable and reflected sound trial strategy. We agree.

At the evidentiary hearing, defense counsel testified that his trial strategy was to minimize and not draw attention to the prosecution's expert witness. Consistent with this strategy, defense counsel attacked Cottrell's credibility at trial by labeling his work as a "soft science" that could rarely provide absolutes. In addition to this, defense counsel elicited, through cross-examination, testimony from Cottrell that anyone is capable of lying and that Cottrell, who was unfamiliar with the facts of the case, could not tell the jury whether ND and TD were lying. Given defense counsel's strategy to minimize Cottrell's impact on the jury and focus instead on the lack of physical evidence, the victims' contradictions and motive to lie, and the sufficiency of the investigation, defense counsel explained that he believed that presenting expert testimony would have undermined the focus of the defense. Defense counsel reasoned that, if he put an expert on the stand, that expert would have had the same shortcoming of not being able to ascertain whether ND and TD were lying, which would have undermined his theory that they were. Defense counsel

did not want to confuse the jury with additional expert testimony, believing that the facts of the case did not establish guilt beyond a reasonable doubt.

Considering defense counsel's chosen defense strategy, defendant has failed to rebut the presumption that it was an objectively reasonable strategic decision not to call a defense expert. Indeed, "effective counsel need not always provide an equal and opposite expert" to rebut the prosecution's case. *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018) (quotation marks and citation omitted). This is because, "[i]n many instances[,] cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* (quotation marks and citation omitted). In this case, defense counsel effectively cross-examined Cottrell to distance his testimony from the ultimate issues to be decided by the jury by having him admit that he could not testify in absolutes and could not determine whether ND and TD were being truthful. This constituted sound trial strategy.

Further, as defense counsel stated at the evidentiary hearing, calling a rebuttal expert witness would have lent credence to the importance of Cottrell's testimony instead of reducing Cottrell's impact as much as possible, which would have undermined his overall strategy. Indeed, Dr. Jarrad Morgan testified at the evidentiary hearing that he similarly could not speak in absolutes with respect to whether the assaults occurred. Dr. Morgan could only speculate about possible influences affecting ND and TD's disclosures, and he could not point to any specific facts from the record that indicated ND's and TD's disclosures were borne from suggestibility. Therefore, given the similarities that limited Cottrell's testimony and would have limited Dr. Morgan's testimony, presenting an expert witness for the defense could have been inapposite to defense counsel's strategy of undermining the credibility and relevance of Cottrell's testimony.

Moreover, Dr. Morgan noted that the concept of suggestibility was not particularly applicable when the theory was that the child intentionally lied because, if the child intentionally lied, the child did not believe that what they were saying actually happened to them. Therefore, given the fact that defense counsel's strategy was to convince the jury that ND and TD *intentionally* lied about the allegations, rather than being confused about or misstating the events, testimony about suggestibility would likely not have supported defense counsel's trial strategy. Accordingly, defendant cannot establish that defense counsel's decision to not consult with or retain an expert witness fell below an objective standard of reasonableness.

Further, defendant cannot establish that he was prejudiced as a result of defense counsel's failure to consult with or retain an expert witness. Indeed, given the fact that Dr. Morgan, just as Cottrell, could not testify about whether ND and TD were lying, and ND and TD provided detailed accounts of the sexual abuse, it is unlikely that the addition of Dr. Morgan's expert testimony would have impacted the outcome of this case. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Because defendant failed to show that but for the failure to retain an independent expert, the result of the lower court proceedings would have been different, *id.*, the trial court did not abuse its discretion by denying defendant's motion for new trial on the basis of ineffective assistance of counsel.

Defendant also cursorily claims on appeal that defense counsel's failure to object to the trial court's evidentiary ruling on the basis of its violation of defendant's constitutional right to present a defense constituted ineffective assistance of counsel. However, defendant fails to address how defense counsel's failure to object to the trial court's evidentiary ruling on this basis constituted deficient performance or how that deficient performance prejudiced him. As noted earlier, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640. Indeed, "[s]uch cursory treatment constitutes abandonment of the issue." *Matuszak*, 263 Mich App at 59. Because defendant fails to give more than cursory treatment to this issue on appeal, and makes no citation to supporting authority, defendant has abandoned this issue and we do not need to address the merits of his claim.

D. CUMULATIVE EFFECT

Lastly, defendant argues that the cumulative effect of these alleged errors warrants reversal of his convictions. We disagree.

We review the cumulative effect of alleged errors "to determine if the combination of alleged errors denied defendant a fair trial." *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *Id*. at 388. However, "the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. Therefore, "[i]n order to reverse on the grounds of cumulative error, the errors at issue must be of consequence," meaning that "the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Knapp*, 244 Mich App at 388.

As discussed earlier, the errors that defendant alleges on appeal did not constitute error. Moreover, no errors put forward by defendant were of consequence because there was sufficient evidence upon which the jury could have convicted defendant. Therefore, even if these alleged errors did constitute error, those errors did not prejudice defendant because there is no reasonable likelihood that, had the errors not occurred, the outcome of the proceeding would have been different. Accordingly, reversal is not warranted.

Affirmed.

/s/ Michelle M. Rick
/s/ Kathleen Jansen
/s/ Anica Letica

-10-